## MOBILE & O. R. CO. v. COERVER.

### (Circuit Court of Appeals, Seventh Circuit. January 7, 1902.)

### No. 752.

1. RAILROADS—BACKING TRAIN—BRAKEMAN ON REAR CAR—CHARGE—NEGLIGENCE.

Plaintiff's intestate was killed, while driving across a railroad track, by a freight train backing against his team. The evidence was conflicting as to whether the brakeman was on the rear car, or on the car next to it and just stepping onto the rear car, when deceased was first seen. The court instructed that it was the absolute duty of the railroad company to have had a brakeman on the rear car; that, if there was no brakeman stationed on such car, defendant was guilty of negligence; and that it was also guilty if the brakeman saw deceased approach the train and in a position of danger and failed to signal the engineer, if the train could have been checked so as to have avoided the danger. *Held*, that the instruction was erroneous, as making the defendant liable if the brakeman was not on the rear car.

2. SAME—SIGNALS—TO ENGINEER—TO PERSON IN DANGER.

Plaintiff's intestate was killed, while driving across a railroad track, by a backing freight train. The testimony was that, when the train first came in sight, the horse was walking a few feet from the track, and that the brakeman first whistled shrilly and called to deceased to warn him, but, not succeeding in attracting his attention, signaled the engineer just before the car struck the team. *Held*, error to charge that it was the duty of the brakeman to signal the engineer immediately on the appearance of danger to the person approaching the track.

3. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—INSTRUCTION FOR DEFENDANT.

Where a man of mature years and unimpaired faculties, who is familiar with a railroad crossing and its use in the running and switching of trains, while a regular freight train is engaged in its customary switching operations, and with nothing to distract his attention, without stopping or looking, drives at a walk onto the track at such crossing in front of a string of cars attached to the engine moving at a slow rate of speed, and is injured, he is conclusively guilty of contributory negligence, and the court should so instruct the jury.

Grosscup, Circuit Judge, dissents in part.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

The plaintiff in error was the defendant below in an action of trespass on the case brought by Killian Coerver, as administrator, to recover damages for the death of John Coerver, his intestate, alleged to have been caused by the negligence of such defendant in the operation of its train over a street crossing in the city of Waterloo. The trial resulted in a verdict against the defendant and from judgment thereupon this writ of error is prosecuted. The railroad tracks upon which John Coerver was killed extend in a northerly and southern direction upon the western boundary of Waterloo, and comprise three tracks, with the main track on the east, a passing track in the center, and the westernmost is a so-called "house track." The street crossing is known as "Fifth Street," an east and west street of the city or village, 60 feet in width, which extended to the east side of the tracks; thence westward it constituted a main thoroughfare to and from the country and to a cemetery situated about a quarter of a mile west of the tracks. On the south side of Fifth street and east of the tracks are the depot, platform, and freight and coal houses of the railroad. At the time of the accident in question a freight train had arrived, and had detached a caboose and freight cars, which were placed on the main track so that the caboose extended north of a freight car which was being unloaded at the freight house, but the testimony is conflicting whether the caboose extended over the south half of the street, or merely to its south margin; and the engine with six cars attached was backing northwardly on the middle or passing track south of Fifth street to take up cars which were on the same track north of the crossing. The deceased approached the crossing from the east, driving a team of horses at a walk, seated with his son, 13 years of age, on an oil wagon, and in passing over the tracks was struck by the backing cars and killed. The witnesses, both trainmen and bystanders, concur in the testimony that the deceased neither stopped his team nor appeared to hesitate or notice the danger, and the only disputes upon the material facts are in these particulars: Whether the rear brakeman was on the rear car, or merely on the next car ahead and running toward the rear car; whether he could have been observed by the deceased, if the latter had given attention; whether his warning to the deceased was timely; and whether the engine bell was ringing.

John M. Lansden and Angus Leek, for plaintiff in error.

Seneca M. Taylor, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after the foregoing statement, delivered the opinion of the court.

The assignment of errors upon this record presents the question whether the verdict is supported by testimony upon the primary issue of negligence on the part of the defendant in the operation of its train, but our conclusion that either or both of the grounds mentioned below are well assigned will render it unnecessary to consider the evidence as a whole upon that serious question. The assignments referred to are: (1) Error in the instruction of negligence per se, if the brakeman was not "stationed on the rear or hindmost car," and if he failed to signal the engineer to stop the train when he observed the danger of the deceased, and the jury are satisfied that injury could have been averted by such signal; and (2) error in the denial of a peremptory instruction of not guilty, based upon proof of contributory negligence on the part of the deceased.

1. The twelfth assignment of error rests upon an instruction to the jury as follows, and an exception thereto duly preserved:

"The court charges you, the jury, that it was the duty of the defendant, on the occasion in question, in backing its train toward Fifth street, to have a brakeman stationed on the rear or hindermost car of said backing train, whose duty it was, immediately on the appearance of danger, to have used reasonable care in signaling the engineer operating such train of such danger, so that said engineer, if he could by the exercise of reasonable care, might check the speed of said train and prevent collision; and if you believe from the evidence that on the occasion of the injury to John Coerver, deceased, which resulted in his death, there was no brakeman stationed on said rear car, or if, on the other hand, you believe from the evidence that there was a brakeman stationed there, and that he saw said deceased approaching the track on which said cars were backing, and that said deceased was in a position of danger, and likely to be run into and injured, unless the speed of said train was checked, and that, notwithstanding said brakeman saw that said deceased was in immediate danger, he failed to give any signal or notice to the engineer operating said train of said deceased's danger until the instant of the collision, and if you further believe from the evidence that, after said brakeman saw said deceased was in danger, he could, by the exercise of reasonable care, have signaled the engineer in time so that the engineer could, by the exercise of reasonable care, have checked the speed of said backing train sufficiently to have avoided the injury to said deceased, then the defendant was guilty of negligence, and if you believe from the evidence that the deceased at the time was using due care for his safety, and was guilty of no fault or negligence contributory to his injury, then you will find the defendant guilty as charged in the declaration."

All the testimony concurs upon the issue thus stated in showing that the rear brakeman, Provo, was either at or near the north end of the train when it approached the crossing, backing northward; that such brakeman in either position could have obtained sight of the approach of the deceased a short distance only east of the crossing; that he saw the deceased and his team approaching at a walk, when a few feet distant from the tracks; that immediately thereupon he whistled and cried out to warn the deceased of the danger, but did not attempt to signal the engineer to stop the train until after such warning and about the instant the team entered upon the crossing. The only conflict in the testimony upon this point is in reference to the exact location of the brakeman,—whether he had reached the rear car, or was on the next car forward, and merely in the act of passing to the rear car,—and, perhaps, disagreement as to the time and character of his warning to the deceased. As stated by the witness Provo, he climbed upon the rear car of the backing train at the switch, and was there stationed and on watch up to the crossing. He observed the approach of the deceased when the train was about 50 feet from the south side of the street and the team was 10 or 15 feet east of the main track, or about 30 feet east of the passing track, on which the train was moving,—the team being upon a walk, and the train backing at the rate of 6 or 7 miles per hour,— and immediately gave a shrill whistle and a cry of warning to attract the attention of the deceased, but the deceased drove on without noticing the warning or looking in the direction of the train until the instant of collision; and he testifies that the train could not have been stopped before the crossing was reached by a signal to the

engineer. from the earliest moment it was possible to observe the team from any position on the rear car, and for that reason no such signal was attempted. This testimony is corroborated by other witnesses for the defendant, and by certain of those called by the plaintiff, to the extent of showing the presence of the brakeman on the rear car and his efforts to warn the deceased. Other witnesses on behalf of the plaintiff testify that the brakeman was on the second car from the rear when he whistled or cried out, but was running or walking rapidly in the direction of the rear car.

This instruction thereupon unmistakably states these propositions: (1) That it was the absolute duty of the defendant in such case "to have had a brakeman stationed on the rear or hindmost car of said backing train"; (2) that "immediately on the appearance of danger" the brakeman must use "reasonable care in signaling the engineer operating such train of such danger," for the purpose of stopping the train, if that can be done "by the exercise of reasonable care"; (3) that if "there was no brakeman stationed on said rear car" the defendant was guilty of negligence; and (4) that it was alike guilty if the brakeman saw the deceased "approaching the track" and "in a position of danger, and likely to be run into and injured, unless the speed of the train was checked," and then failed to signal the engineer, if the jury further believe from the evidence that the signal could then have been given and the train checked "sufficiently to have avoided the injury." The jury were thus instructed, under the one aspect of the testimony, that the defendant was guilty of negligence, as a conclusion of law, if the brakeman was not "on the rear or hindmost car" when it approached the crossing, and without submitting to their consideration the questions of fact as to the environment and the exercise of care, both on his part and in the operation of the train. So directed, the finding of negligence was inevitable, if the jury accepted as true the testimony that the brakeman had not reached a station on the rear car. The operation of backing a train is one of special danger, demanding the exercise of care throughout the operation commensurate with the danger involved; and such care is of the utmost importance when the cars are backing over a street crossing of the character shown in this instance. As one of the provisions to that end, the requirement is well recognized to have one of the train crew in position upon the rear of the backing train to watch the track and approaches to the crossing, and give needful warnings and signals. But the inquiry whether the brakeman proceeded with due care and celerity, or was in position for performance of this duty, is one of fact, and under the testimony in this case, at least, the peremptory and unqualified direction thereupon was erroneous.

The alternative proposition, as to the duty of the brakeman to signal the engineer "immediately on the appearance of danger" to the person approaching, is equally faulty, and perhaps the more serious error, in view of the conceded fact that such signal was not given until after the attempted warning and about the instant of collision. It ignores the testimony of the prior attempt to warn the deceased, when he was at sufficient distance to have stopped his team, then on

a walk, and when the brakeman on the backing train was in plain view, if the driver had looked in that direction, and places the test of liability upon the failure to signal the engineer, if the jury "believe from the evidence" that the signal could then have been given and the train checked "sufficiently to have avoided the injury." In other words, it withholds from consideration the exercise of duty in giving warning,—a duty which was of equal, if not greater, importance under the conditions,—and charges liability for assumed error on the part of the brakeman in his effort to warn the deceased on the instant of discovering his approach, instead of giving a signal to stop the train, provided the jury believe the train could then have been stopped before collision. The emergency which confronted the brakeman demanded instant action in one or the other of these two courses, and in such case the rule for which the defendant contends is not without support by excellent authorities,—namely, that the master is not rendered liable for a mistaken exercise of judgment by the servant in making his instant choice. Lewis v. Railroad Co., 162 N. Y. 52, 62, 56 N. E. 548. It is unnecessary, however, for the purposes of this case, to ascertain either the correctness of the instruction requested and refused upon such contention, or the existence of such general rule, as there was manifest error in so instructing the jury that the issue of reasonable care on the part of the brakeman was limited for their consideration to the single course of an effort to stop the train,—an effort not made until after the attempted warning; and this restriction of the exercise of care on the part of the brakeman was clearly prejudicial, in the absence of correction elsewhere in the charge, whether the test of liability for his conduct is the want of reasonable care under all the evidence or error in judgment. As the entire charge of the court is preserved in the bill of exceptions, and it thus appears that modification of the instruction in question was neither made nor intended, we are of opinion that the assignment of error thereupon must be sustained.

2. The ground which remains to be considered is the alleged error in the refusal of the court to give the peremptory instruction requested in favor of the defendant, upon the evidence of contributory negligence on the part of the deceased. Under the well-settled rules which govern this court, contributory negligence is matter of defense, and the burden of proof is imposed upon the defendant, thus conceding the presumption of fact that reasonable care was exercised; and unless that presumption is clearly repelled by the proof, or in the event of fair conflict in the testimony thereupon, the issue is for determination by the jury, and not subject to express direction by the court. So considered, is there room for reasonable difference of opinion, under the testimony in this case, whether the deceased was in the exercise of such care when he drove upon the crossing? In the recent case of Railroad Co. v. Freeman, 174 U. S. 379, 382, 19 Sup. Ct. 763, 43 L. Ed. 1014, the rule of care to be applied is thus stated:

"The duty of a person approaching a railway crossing, whether driving or on foot, to look and listen before crossing the track, is so elementary, and has been affirmed so many times by this court, that a mere reference to the

cases of Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542, and Schofield v. Railway Co., 114 U. S. 616, 5 Sup. Ct. 1125, 29 L. Ed. 224, is a sufficient illustration of the general rule."

The testimony in the case at bar establishes these undisputed facts: Mr. Coerver was a man of mature years, with faculties unimpaired, and had been long engaged in the business of distributing oil to customers with his team and tank wagon, taking his supply from an oil tank located near the Fifth street crossing, so that he was familiar with the crossing and with its use in the running and switching of trains; and the train in question was a regular freight train, engaged in switching operations which were customary at or about such time and place. He approached the crossing from the east, with his usual team and tank wagon, driving at a walk, and having his young son on the wagon seat with him. No other teams were in the roadway east of the track, and no cars were moving, except a single string, which was backing on the middle track and momentarily concealed from view by the depot building and standing cars; and there is no evidence of distracting circumstances to withdraw the driver's attention from the proximity of the crossing. The fact that the caboose standing on the east track may have occupied half of the street, as stated by some of the witnesses, would not have served to distract such attention, though it would tend to obstruct the view. All the witnesses who observed the approach of the team to the crossing concur in their testimony that Mr. Coerver neither checked up, nor appeared to be giving attention to the crossing, tracks, or cars; and this is confirmed by all the circumstances. Before reaching the crossing the fact was apparent that the freight train had arrived, and that its usual operation of switching was to be looked for. This was clearly indicated by the detached caboose and freight car standing on the main track in full view, and there was ample unobstructed view, at a reasonable distance east of the crossing, to have seen the engine and cars engaged in switching south of the depot, had Mr. Coerver looked in that direction. Moreover, if the caboose occupied the south half of the street as claimed, such fact would call for the exercise of greater diligence and precaution on the part of the driver in making the crossing than would otherwise be required. With the team perfectly under control, it is plain that a pause to ascertain the safety of the way would have avoided the catastrophe. Upon such state of facts we are of opinion that contributory negligence conclusively appears within the doctrine above cited, followed by this court in recent decisions. McCann v. Railway Co., 44 C. C. A. 566, 105 Fed. 480; Work v. Railway Co., 45 C. C. A. 101, 105 Fed. 874.

The judgment of the circuit court is reversed accordingly, and the cause remanded, with directions to grant a new trial.

GROSSCUP, Circuit Judge (dissenting). I concur in the reversal of the judgment of Court below, upon that portion of the Court's charge to the jury which in effect instructed the jury that unless a brakeman was upon the rear car, the railroad company was, in law, guilty of negligence. I think the learned District Judge was misled

by the Illinois statute relating to the operation of trains in switch yards. There are doubtless situations, outside switching yards, in which, at common law, the company should have had a man at the rear end of the train; but his presence there as a matter of careful management is a mixed question of fact and law, not a peremptory command of the law.

I dissent from the opinion so far as it relates to contributory negligence. It is doubtless the duty of a person approaching a railway crossing, whether driving or on foot, to look and listen before crossing the track; but the law does not command that he must, in every instance, stop to look and listen. Whether to stop is an essential, is a question of fact to be determined by the circumstances of the given case.

In the case under consideration, both Coerver and his son are dead. What they did in the way both of looking and listening we have no means of knowing, except the inadequate observation of distant witnesses who were under some excitement. The roadway upon which Coerver traveled was not paved. His vehicle was probably comparatively noiseless. The outlook in one direction was unobstructed; in the other, was obstructed by the depot and the standing cars.

We have no right to assume, in the presence of a silence like that of Coerver and his son, that they did not in fact look in both directions and that they did not listen. A stop upon a soft road would have added little, if anything, to their safety, unless one of them had dismounted and walked around the end of the train. I cannot think, from my own observation and experience, that ordinarily prudent men would have taken this precaution. Indeed, it would have looked somewhat extraordinary, and the law imposes no such requirement.

We should start out, in a case like this, with the presumption that two people approaching a track will exercise care. Were they here to testify, they could probably show that they did exercise care, both by looking and listening. The opinion of the majority, upon proof, to my mind wholly unsatisfactory, shifts that presumption, and, thereby, visits upon the dead a result that, had they survived, would probably have been overcome.