## DISHON v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. November 30, 1904.)

### No. 1,316.

1. REMOVAL OF CAUSES—MOTION TO REMAND—FAILURE TO ANSWER PETITION ALLEGING FRAUDULENT JOINDER.

Where a petition for removal filed by one of two defendants shows that its codefendant has not been served with summons, and affirmatively alleges that he in no manner contributed to the injury sued for, and that it is not the plaintiff's intention to prosecute the action against him in good faith, but that he was fraudulently joined as a defendant for the sole purpose of defeating the jurisdiction of the federal court, if no issue is joined upon such allegations they are to be taken as true; and a motion to remand, which raises only the legal question of the sufficiency of the petition, should be overruled, where the petition is otherwise sufficient.

2. RAILROADS—INJURY OF PERSON CROSSING BETWEEN CARS ON SIDE TRACK—CONTRIBUTORY NEGLIGENCE.

A section hand was caught and crushed between two cars on a side track at a station, which were moved together by an engine as he was attempting to pass through between them, where they were standing

about a foot and a half apart. A freight train was due, and was in fact at the station, and the engine was engaged in switching on the side track, but the deceased went between the cars without looking or listening to ascertain its whereabouts. *Held,* that he was guilty of contributory negligence, which, as matter of law, precluded a recovery for his death, whatever the capacity in which he was crossing—whether as a private individual, or an employé exercising a privilege as such—and without regard to whether or not the railroad company was negligent in moving the cars without warning.

In Error to the Circuit Court of the United States for the Eastern District of Kentucky.

For opinion below, see 126 Fed. 194.

Rawlings & Voris, E. V. Puryear, and Robt. Harding, for plaintiff in error.

John Galvin and Maurice L. Galvin (Edward Colston, of counsel), for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit to recover damages for the wrongful death of the plaintiff's intestate, alleged to have been caused by the joint negligence of the Cincinnati, New Orleans & Texas Pacific Railway Company and George Coffman, one of its engineers, in operating a train of cars. Suit was brought in the circuit court of Jessamine county, Ky.; it being alleged that the plaintiff and the defendant Coffman were citizens and residents of that state.

The negligence complained of is thus averred:

"Plaintiff avers that the defendant George Coffman is, and was on the 30th day of July, 1901, a citizen and resident of the state of Kentucky, and in the employment of the defendant Cincinnati, New Orleans & Texas Pacific Railway Company, as its engineer, and was on the said date engaged in operating and managing one of the defendant's trains of cars in the town of High Bridge, Jessamine county, Kentucky, for said Cincinnati, New Orleans & Texas Pacific Railway Company. Plaintiff avers that on the said date the defendant Cincinnati, New Orleans & Texas Pacific Railway Company was the owner of a section house at High Bridge, in said county, and leased or furnished to its section boss to use and occupy same, and to furnish food and lodging therein to employés of said defendant company, and suffered and permitted and licensed said employés boarding therein to go to and from said house across its railroad in front of said house, and upon said date his intestate, John Dishon, deceased, was in the employment of said defendant company as a section hand and a boarder at said section house; and plaintiff avers that on said 30th day of July, 1901, after working hours, and when said Dishon was coming from said house, and crossing said railroad in front of said [house], the defendant Cincinnati, New Orleans & Texas Pacific Railway Company and the defendant George Coffman, by their gross negligence and carelessness in operating and managing its train of cars, backed the same over and upon and against the plaintiff's intestate, thereby knocking him down and fatally injuring him, from which injuries inflicted by the joint gross negligence of said defendants said Dishon died shortly thereafter, and, by reason of the killing of said Dishon as aforesaid by said defendants, said Dishon and his estate had been damaged in the sum of thirty thousand dollars ($30,000), and plaintiff is entitled to recover said sum aforesaid in damages."

The petition was filed on November 14, 1901, and summons issued. The return on the summons issued to Jessamine county,

·made December 12, 1901, shows that the railway company was served November 29, 1901, and George Coffman was not found. The return on the summons issued to Kenton county, made November 27, 1901, shows that George Coffman was not found. No other returns appear in the record. On March 3, 1902, Coffman not yet having been served, and the day having been reached when the railway company was required to make defense, it filed a petition, with bond, for the removal of the case to the United States Circuit Court. This petition, after stating the amount sued for, which exceeded the jurisdictional sum, and that the railway company was a citizen of Ohio, and the plaintiff a citizen of Kentucky, alleged:

"Your petitioner further says that in this suit plaintiff has fraudulently, wrongfully, improperly, and illegally joined as codefendant one George Coffman, who is alleged by plaintiff in his petition to be a citizen and resident of the state of Kentucky; and your petitioner says that George Coffman was fraudulently, wrongfully, improperly, and illegally joined as a codefendant in this suit because of the alleged fact, if it is a fact, that said George Coffman is a citizen and resident of the state of Kentucky, for the sole purpose of defeating the jurisdiction of the United States court. Your petitioner says that it denies that the said George Coffman is a citizen and resident of the state of Kentucky, and says that George Coffman has never been served with summons herein, and that it is not the purpose or intent of the plaintiff to prosecute the action in good faith against the said George Coffman, but that the said George Coffman was made a party defendant herein for the sole purpose and reason of attempting to defeat the removal of this cause to the Circuit Court of the United States, and to defeat the jurisdiction of the said Circuit Court of the United States; and your petitioner further says that the said George Coffman did not in any manner or degree contribute to the death or injury of said plaintiff's decedent through his own negligence, or through any joint negligence with this petitioner. Your petitioner further says that it is the only defendant in court in this action, and that said plaintiff at the time of filing his said petition well knew that the said George Coffman was not guilty with the petitioner of any joint negligence, and that said George Coffman is a sham defendant, and is so made a defendant for the sole and only purpose of fraudulently, improperly, and illegally defeating the removal of this case to the United States court, and defeating the jurisdiction of the United States court in this cause as aforesaid."

This petition was verified by the affidavit of the general manager of the railway company. No answer to it was filed, nor in any other way was issue joined upon its averments. The case being removed to the United States court, there was a motion to remand, which was overruled. The case came on for trial. Coffman had not been served with summons, and no evidence whatever was introduced connecting him in any manner with the transaction complained of. After the testimony was all in, a motion to direct a verdict for the defendant was sustained, and the case comes here on two assignments of error—first, in overruling the motion to remand; and, second, in giving the peremptory instructions.

1. While there is the broad averment that both the railway company and its engineer, Coffman, were guilty of "joint gross negligence," the only act charged to support this was the negligent backing of the train of cars against plaintiff's intestate while he was crossing the track under sufferance or license from the railway company. The only act complained of, therefore, was that

of the engineer, and, because of it, negligence was imputed to the railway company. We are not satisfied that under the ruling in C. & O. Ry. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121, such an act constitutes joint negligence, for which both the railway company and its engineer may in one action be held liable. Warax v. C., N. O. & T. P. Ry. Co. (C. C.) 72 Fed. 637; Hukill v. Maysville & B. S. R. Co. (C. C.) 72 Fed. 745; Helms v. N. P. R. Co. (C. C.) 120 Fed. 389; Davenport v. Southern Ry. Co. (C. C.) 124 Fed. 983; Gustafson v. Chicago, R. I. & P. Ry. Co. (C. C.) 128 Fed. 85; Shaffer v. Union Brick Co. (C. C.) 128 Fed. 97; and American Bridge Co. v. Hunt (C. C. A.) 130 Fed. 302. But as we have certified the question to the Supreme Court in the case of Alabama Great Southern Railway Co. v. H. C. Thompson, Administrator, recently before us, we refrain from discussing it now.

2. We think the court was right in refusing to remand the case to the state court. At the time the petition for removal was filed, nearly three months had elapsed since summons issed for Coffman had been returned, "Not found." No efforts were being made to bring Coffman into court and prosecute the action against him. The petition for removal, which was verified, denied that Coffman was a citizen of Kentucky, averred that he had not been served with summons, and alleged that it was not the purpose of the plaintiff to prosecute the action against him, but that he had been made a party defendant for the sole purpose of preventing the removal of the case to the United States court. It further averred that Coffman "did not in any manner or degree contribute to the death or injury of said plaintiff's decedent through his own negligence, or through any joint negligence with this petitioner"; that the plaintiff knew this when he filed his petition; and that Coffman was a sham defendant—made so for the sole purpose of fraudulently defeating the jurisdiction of the United States court.

Conceding that the intent with which a party is made defendant is not material, where a cause of action exists, and the defendant is brought into court in good faith, with the intention of keeping him there and prosecuting the case against him to a conclusion, it is settled that where a person is made a defendant for the sole purpose of preventing the removal of the case to the United States court, and without any intention of prosecuting the case against him, the court will consider him a merely nominal or sham defendant —made so for a fraudulent purpose—whose presence in the case can be ignored.

The averments of the petition for removal were not simply denials of the allegations of the plaintiff's petition. They were affirmative in form and substance. They charged a case of fraudulent joinder. If, as they alleged, Coffman did not in any sense contribute to the death of the plaintiff's intestate—if the plaintiff knew this fact, and, although Coffman was not a citizen of Kentucky, made him a party defendant for the sole purpose of defeating the removal of the case to the United States court—a case for removal, regardless of Coffman's nominal presence, was presented. If these averments were not true, the plaintiff should have denied them,

and an issue would then have been made for the court below to try and determine. No answer was filed, no issue in any other way was taken. The plaintiff contented himself with making a motion to remand, and which only raised a legal question, namely, whether, upon the facts stated in the petition for removal, taken in connection with the record, a case for removal was made out.

In Dow v. Bradstreet Co. (C. C.) 46 Fed. 824, it was held that a codefendant joined for the mere purpose of preventing a removal might be regarded by the federal court as a merely nominal party; Judge Shiras saying:

"To properly present the question, the allegations of fact relied on as showing the fraudulent joinder of the party should be made in the petition for removal, unless they otherwise appear upon the face of the record. If the facts alleged, if true, make out the charge of fraudulent misjoinder of parties for the purpose named, and the other party desires to take issue upon the truth thereof, then the trial thereof must be had in the federal court." Citing cases.

In this case the court further says, after recounting the allegations of the petition (page 828):

"The motion to remand does not raise an issue upon the facts thus alleged and sustained, but presents the legal questions already discussed, and upon these the ruling must be adverse to the motion to remand."

In Durkee v. Ill. Cent. R. Co. (C. C.) 81 Fed. 1, the petition for removal alleged that one of the defendants was joined for the sole purpose of defeating the jurisdiction of the federal court; and it was held that, no issue being taken, the facts alleged in the petition, which was supported by affidavit, would be taken as true, and the motion to remand overruled. It was open to the plaintiff to join issue upon the facts alleged in the petition for removal. If he did not, "the allegations of the petition, being supported by affidavits, will be taken as true." There was a motion to remand, but it was held it did not operate as a denial of the allegations of the petition for removal.

In Kelly v. Chicago, etc., Ry. Co. (C. C.) 122 Fed. 286, Judge Philips said (page 289):

"Even where the petition stating the cause of action on its face presents a joint liability between a resident and a nonresident defendant, it may nevertheless be shown in the petition for removal that in fact no cause of action exists against the resident defendant, and that his joinder as a codefendant was for the purpose of defeating the removal of the cause, and that where this allegation of the petition for removal is supported by proofs, as by affidavits, it devolves upon the plaintiff to take issue upon this fact, which issue shall be tried by the United States court, and, if the plaintiff fail to controvert such petition and affidavit, the allegations of the petition for removal stand admitted." Ross v. Erie R. Co. (C. C.) 120 Fed. 703; Dow v. Bradstreet Co. (C. C.) 46 Fed. 824; Durkee v. Ill. Cen. R. Co. (C. C.) 81 Fed. 1; Prince v. Ill. Cen. R. Co. (C. C.) 98 Fed. 1; Arrowsmith v. N. & D. R. Co. (C. C.) 57 Fed. 170.

In Weaver v. Northern Pacific Ry. Co. (C. C.) 125 Fed. 155, Judge Knowles says:

"Where the petition for removal states jurisdictional facts, such as citizenship, etc., which are not true, the plaintiff may traverse these facts by allegations in the nature of a plea in abatement, and the court can receive evidence to determine the same." Dillon's Removal of Causes, § 158, note 4.

In Board of Commissioners v. Toronto Bank (C. C.) 128 Fed. 157 (March 12, 1904), Judge Pollock said:

"Whether the citizenship of the parties, or other jurisdictional facts essential to confer jurisdiction upon this court, actually exist, is always a question of fact, which must be determined, in case of removal into this court from a state court, by this court from the allegations of the petition for removal, if no issue is joined thereon, or from the proofs offered in support of such petition, if issue is joined thereon." Citing Plymouth Mining Co. v. Amador Canal Co., 118 U. S. 264, 6 Sup. Ct. 1034, 30 L. Ed. 232; Kansas City Suburban Belt Ry. Co. v. Herman, 187 U. S. 63, 23 Sup. Ct. 24, 47 L. Ed. 76.

The undenied allegations of the petition for removal, taken in connection with the fact that Coffman had not been served, and no attempt was being made to serve him, and no explanation of the failure to serve him was given, amply justified the court, in our opinion, in refusing to remand the case.

3. High Bridge is a station on the defendant railway just north of where it crosses the Kentucky river over what is known as "High Bridge." The station house was near the bridge, on the west side of the main track. On the east of the main track, extending north from the station, were two side tracks; the one next the main track being a passing track, used for the meeting and passing of trains; and the one east of it, the house or storage track, used for storing cars and loading and unloading freight. To the east of the house track, and a short distance from it, was the section house, which was owned by the railway company, leased and occupied by the section boss, McCarthy, and in which a number of the section hands boarded. High Bridge is a small village, of 200 or 300 inhabitants, and the store and post office are on the west side of the main track.

The claim of the plaintiff was that the railway company licensed and permitted its sectionmen, who boarded at the section house, to cross the tracks in front of the house, and for this purpose maintained an opening between the cars which happened to be standing upon the house track. The railway company denied that it maintained an opening between the cars for that purpose, asserting that whatever openings had existed were the result of chance. The testimony was conflicting; the witnesses for plaintiff testifying there was a path from the section house to and across the tracks, and at this point an opening was maintained, while those for the defendant testified that the path led only to the tracks, and not across them; that no opening was, purposely left, but the hands who desired to cross the tracks used whatever opening there happened to be, and, if there was none, either crawled under, climbed over, or went around the cars.

The deceased was a section hand, and boarded at the section house. On the day of the accident, after his day's work was done, and he had eaten supper, he left the section house, in company with two other hands (McCarthy and Keith) to go over to the station house. No business or duty called them there. Their object was to pass the time until bedtime. Just before the three left the supper table, the engine of the freight train, then at the station on its regular trip and time, went by on the passing track,

going north. McCarthy heard it, and there is a fair, though not conclusive, presumption that the deceased did too. If the deceased did, he might have expected the engine would soon be on the house track, moving the cars there. But it is not material whether he did or did not. It was the time for the freight train, and he knew the uses to which the house track was put. The three young men passed out of the gate, and turned towards an opening which existed between the cars about 15 or 20 feet south. This opening was only about a foot and a half wide. McCarthy was in front. About 10 feet behind him came the deceased and Keith. McCarthy testified that when he came to the opening he "rushed through"— "squeezed through between the cars sideways." The deceased and Keith came along, talking together. Reaching the opening, the deceased entered it, but before he got through the car to the north of him was shoved back by the engine then at work on the house track, and he was caught and crushed. Keith had just started to enter the opening when the cars came together. They knocked him back uninjured.

The negligence complained of was the backing of the cars against the decedent without notifying him by the bell or whistle of the engine that the movement was about to be made. The court below did not pass upon the question whether there was testimony for the jury tending to show the plaintiff was guilty of negligence, or upon the question whether the testimony made out a case of contributory negligence on the part of the decedent, but placed his peremptory instructions upon the proposition that, if the deceased was licensed to cross the track through an opening left by the company between the cars, the privilege was conferred upon him as an employé, and he could only exercise it by virtue of his employment. This being the case, in the enjoyment of this privilege he assumed the risk of negligence of his fellow employés engaged in moving the cars upon the house track. Therefore the only negligence claimed or shown was that of fellow servants, for which the railroad company could not be held liable.

The opinion of the court below upon this point of law is a well-considered one, containing an interesting review of the cases. In view, however, of the opinion of this court in the case of Ellsworth v. Metheney, 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389, in which we held that a coal miner, who, during the noon hour, while not engaged in work, goes to a different part of the mine for the purpose of visiting with another miner, is not, while so absent, engaged in the line of his duty, so as to impose upon his employer the duty of a master, to see that the entries through which he passes from and to the part of the mine where he is employed are kept in safe condition for passage, we prefer to base our judgment sustaining the action of the court below upon the fact that, whatever the capacity in which the deceased was crossing the track—whether as a private individual or as an employé, exercising a privilege as such—and whether the railroad company was or was not guilty of negligence in closing the opening between the cars without warning the deceased by the bell or whistle of the engine of what he

might expect, the testimony makes out a plain case of contributory negligence on the part of the deceased.

If the deceased had been about to cross these tracks at a public crossing, where he had a clear right to cross, it would have been his duty, in approaching the crossing, to exercise the faculties given him for his own protection—to stop, if prudence demanded it, and to look and listen. A railroad crossing is a dangerous place, and care and caution are required from one about to use it. He may not throw the entire burden on the railway company. The neglect of an approaching engine to blow its whistle or ring its bell does not excuse him for a failure to use his eyes and ears, when they would have warned him of the approach of the cars. The principle is elementary. R. Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; Schofield v. Chicago & St. Paul Ry. Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; N. P. Ry. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; Blount v. Grand Trunk Ry. Co., 61 Fed. 375, 9 C. C. A. 526; C., N. O. & T. P. R. R. Co. v. Farra, 66 Fed. 496, 13 C. C. A. 602; Pyle v. Clark, 79 Fed. 744, 25 C. C. A. 190; Gilbert v. Erie R. Co., 97 Fed. 747, 38 C. C. A. 408; Neininger v. Cowan, 101 Fed. 787, 42 C. C. A. 21; McCann v. Chicago, etc., Ry. Co., 105 Fed. 480, 44 C. C. A. 566; Mobile & O. R. R. Co. v. Coever, 112 Fed. 489, 50 C. C. A. 360.

The deceased was not about to use a public crossing. Under the claim of the plaintiff, he was crossing by mere license or sufferance, and certainly must be held to have been bound to exercise not less care than if he were crossing where he had a clear right to cross.

The three young men came out of the section house together. They walked down to the narrow opening between the cars. It may be remarked incidentally that this opening of itself indicated it had not been left for persons to pass through. It was too narrow. McCarthy was in front; the deceased and Keith, behind, talking together as they walked. Neither McCarthy nor Keith stopped; neither listened; neither looked to see whether the engine was coming back. Neither of them saw the deceased either stop or look or listen. It is obvious they would have noticed it if the deceased had either stopped or looked or listened. If he had stopped and looked and listened, he would undoubtedly have observed that the engine was on the house track, switching cars. A witness who testified to certain obstructions conceded that, when near the track, one could have noticed the engine. These facts make out a plain case of negligence on the part of the deceased which contributed to his injury.

The judgment of the lower court is affirmed.