## MILLER v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

(Circuit Court of Appeals, Fourth Circuit.   March 24, 1922.)

No. 1942.

1. Evidence ⊚⇒10(2)—Court takes judicial notice of district in which town is located.

Where the complaint in an action removed to the United States District Court alleged that plaintiff was a citizen residing at a designated town, in the county of Darlington and state of South Carolina, the court will take judicial notice that the town is in the Eastern district of that state.

2. Removal of causes ⊚⇒27—That foreign corporation does business within state does not make it a citizen for purpose of removal.

The fact that a corporation organized under the laws of New York owns property and does business within South Carolina does not make it a citizen of South Carolina, as concerning right of removal.

3 Removal of causes ⊚⇒84—Notice of filing petition, given immediately before filing, is sufficient.

The notice of filing of a petition and bond for removal of a cause, required to be given the adverse party prior to filing the same, by Judicial Code, § 29 (Comp. St. § 1011), was not intended to give opportunity to oppose the filing which is not contemplated by statute, but merely to inform the adverse party that the right of removal will be exercised, so that notice given at any time, however short, before the filing, is sufficient, though the notice of the application for an order of removal must be given in conformity to the requirements of the state statute.

4. Removal of causes ⊚⇒75—Complaint held to show jurisdictional amount was involved in suit to enjoin increased telephone rates.

A complaint seeking to enjoin the collection of increased telephone rates, which alleged the defendant was acting in fraudulent disregard of its contract, and maliciously intending to injure and damage plaintiff, in consequence of which he had already been injured in the sum of $2,999, and would suffer great and irreparable injury, shows that the jurisdictional amount of $3,000 is in controversy, where, in addition to the punitive damages thus sought, which may be considered in determining the jurisdictional amount, it appeared that the telephone company had collected $2.60 in excess of the contract rates, and especially where the petition for removal alleged the amount in controversy exceeded $3,000, and that allegation was not denied by plaintiff.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. **Telegraphs and telephones ☞33(I)—State statute regulating increase of rates held inapplicable to subsequent contracts.**

The proviso to Civ. Code S. C. 1912, § 3161, that no increase in telephone rates which had been fixed in franchises previously granted should be permitted, except by agreement with the municipal authorities and the subscribers, is limited to franchise contracts in force when the statute was enacted, and does not apply to a contract made 12 years thereafter.

6. **Telegraphs and telephones ☞33(I)—Publication of notice of application for increase in rates held sufficient.**

Where a telephone company doing business throughout the state made application to the State Railroad Commission for a general increase of its rates, a publication of the notice of such application in a newspaper of general circulation throughout the state for the time required by Civ. Code S. C. 1912, § 3161, was sufficient to authorize increase in rates in a designated town, without publication of the notice in a newspaper of that town.

7. **Constitutional law ☞135—Private contracts must yield to public welfare.**

The right of private contract must yield to public welfare, when determined in an appropriate manner by authority of the state, so that an increase in telephone rates, ordered by the Railroad Commission as authorized by state statute, is not invalid, as impairing the obligation of the telephone company's contracts.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit in equity by F. A. Miller against the Southern Bell Telephone & Telegraph Company, instituted in the state court and removed by defendant to the United States District Court. From a decree dismissing the complaint, plaintiff appeals. Affirmed.

D. W. Robinson, of Columbia, S. C. (Miller & Lawson, of Darlington, S. C., on the brief), for appellant.

William S. Nelson, of Columbia, S. C., and Henry E. Davis, of Florence, S. C. (Nelson & Mullins, of Columbia, S. C., Willcox & Willcox and P. A. Willcox, all of Florence, S. C., E. W. Mullins, of Columbia, S. C., and Hunt Chipley and E. D. Smith, both of Atlanta, Ga., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

KNAPP, Circuit Judge. By statute enacted in 1904, now section 3161 of volume 1 of the Code of South Carolina, the Railroad Commission of that state was given jurisdiction and control "over all telephone lines, stations, and exchanges," with plenary power to fix and regulate the rates or tolls to be charged for services, and to make and enforce rules and regulations governing such telephone lines, stations, and exchanges. In March, 1916, the appellee, Southern Bell Telephone & Telegraph Company, herein called defendant, entered into contract with the town of Hartsville, S. C., by which it agreed to "furnish local exchange telephone service to its Hartsville exchange subscribers within its exchange radius" on certain terms and at certain rates therein specified, subject to the approval of the Railroad Commission. This agreement was assented to in writing by a majority of

the former subscribers, of whom plaintiff was one, and later confirmed by the Railroad Commission "without prejudice." The "exchange radius" appears to have included Darlington, some 12 miles distant, and a number of rural lines.

In October, 1920, defendant filed a petition with the Railroad Commission, asking revision and increase of its rates throughout the state of South Carolina, on the ground, in substance, that the rates then permitted did not yield the return to which it was entitled. Notice of this application and of a hearing thereon was published "once a week for at least four weeks," as required by section 3161, in the four leading daily newspapers of the state, pursuant to which hearing was begun at Columbia on the 8th of December, and continued for several days. In March following the commission made an order effective "from and after the 1st day of April, 1921," approving and authorizing rates for telephone service in South Carolina according to a detailed schedule annexed thereto. This order prescribed higher rates for Hartsville subscribers than those named in the contract of March, 1916, and also, to correct a discrimination, abolished free service to Darlington; that is, removed Darlington from the "exchange radius," and imposed a toll charge for telephoning to that town.

In May, 1921, plaintiff brought this suit, in the court of common pleas of Darlington county, asserting that the contract of 1916 was still in force and binding on defendant, and that he was entitled to the rates fixed thereby, including free service to Darlington, alleging damages to the amount of $2,999, and demanding judgment for that sum, because of the increased rates enforced for Hartsville service and the imposition of a toll charge to Darlington, and praying for an injunction restraining defendant from refusing to furnish telephone service at the lower contract rates. The bill of complaint makes no mention of the commission's order. Before expiration of the time to plead, defendant filed its petition and bond in the court of common pleas, and gave notice of a motion to remove the cause to the United States District Court for the Eastern District of South Carolina. Upon hearing the motion was granted, for reasons stated in a well-considered opinion, and the cause removed accordingly. In the meantime defendant had filed an answer, setting up the order of the Railroad Commission, and alleging its right and duty to charge the higher rates thereby prescribed. In the court below a motion to remand was denied, the case tried on the merits, and the complaint dismissed. Plaintiff appeals.

[1, 2] The two questions here presented are the right of defendant to remove the cause, and the validity of the commission's order. Of these in their order. The refusal to remand is assailed, first, because, as is claimed, the requisite diversity of citizenship was not made to appear. This contention was not pressed in argument, and is plainly without merit. The complaint alleges that "plaintiff is a citizen and taxpayer, resident at Hartsville, in the town of Hartsville, in the county of Darlington, in the state of South Carolina," and that "defendant is a corporation chartered and existing under and by the laws of the state of New York." This is equivalent to alleging that plaintiff is a citizen of South Carolina, for the court will take judicial notice that

Hartsville is in the Eastern district of that state, and the fact that defendant owns property and carries on business in South Carolina does, not make it any the less a citizen of New York. We deem it beyond doubt that diverse citizenship was sufficiently shown.

[3] It is contended, second, that timely notice was not given of intention to file petition and bond for removal. Section 29 of the Judicial Code, as amended March 3, 1911, provides:

"Written notice of such petition and bond for removal shall be given the adverse party or parties prior to filing the same." Comp. St. § 1011.

And plaintiff argues that this means such notice as may be fixed by rule of court, state or federal, or at least such notice as would be adjudged reasonable. In point of fact, the notice in question was served only an hour or two before the petition and bond were filed, which plaintiff says is practically the same as no notice at all, and therefore manifestly not the notice required. But this, in our opinion, involves a misconception of the purpose of amending section 29. Formerly no notice of filing the petition and bond was necessary, and a cause might be removed without the plaintiff's knowledge. The object of the amendment, as we conceive, was not to give opportunity to oppose the filing, which no statute contemplates, but rather and merely to inform "the adverse party or parties" that the right of removal will be exercised, and this object is accomplished by literal compliance with the provision; that is, by notice at any time, however short, before the actual filing. Hansford v. Stone-Ordean-Wells Co. (D. C.) 201 Fed. 187; Potter v. General Baking Co. (D. C.) 213 Fed. 697; Hinman v. Barrett (D. C.) 244 Fed. 621; Lewis v. Erie Railroad Co. (D. C.) 257 Fed. 869. To hold otherwise is to lose sight of the distinction between notice of filing the petition and bond, and notice of application for an order of removal. In this case the latter notice was given in full accordance as to time and in other respects with the Code of South Carolina, and plaintiff cannot justly complain because the notice of filing was not served until just before the fact. This view harmonizes all parts of section 29 and gives consistency to the whole scheme of removal procedure.

[4] The third contention, stressed in brief and argument, is that the jurisdictional amount is not involved. As above stated, the complaint sets up the contract of March, 1916; alleges that it is in full force and effect; that defendant is bound to furnish telephone service at the rates therein stated, including free service between Hartsville and Darlington, and over the rural lines radiating from Hartsville; that plaintiff is ready and willing to pay such contract rates, and has tendered the same; that defendant, "in flagrant and fraudulent disregard of its said contract, and maliciously intending to injure and damage plaintiff," has demanded excessive and illegal rates and undertaken to enforce them "by willfully, wantonly, fraudulently and maliciously failing and refusing to render to plaintiff, either at his office or at his residence, any telephone service whatever, and has avowed its determination to continue to do so, unless and until plaintiff shall accede to the unjust and illegal demands thus made upon him"; that in consequence he "has already been injured and damaged in the sum of at least $2,-

999"; and that he "will suffer great and irreparable injury and damage" unless defendant be restrained by injunction. It further appears that the rate increase to plaintiff alone, for local service in Hartsville, from the effective date of the commission's order to the time suit was brought, amounts to $2.60, to say nothing of the toll charge to Darlington and on rural lines, or of those increases for the indefinite future for both local and long-distance service.

That punitive damages may be considered in determining the amount necessary to federal jurisdiction is distinctly held in Scott v. Donald, 165 U. S. 58, 71, 17 Sup. Ct. 265, 41 L. Ed. 632, which on this point seems a controlling authority. The damages claimed by plaintiff, and for which judgment is demanded, with the increased charges which had already accrued against him or been paid by him, aggregate something more than the jurisdictional requirement, without taking note of the permanent relief sought by injunction. If the case had remained in the state court, we perceive no legal reason why the plaintiff might not have recovered, under the allegations of his bill, the full amount of damages sued for, and also obtained a permanent injunction against the increased rates, and this assumption necessarily implies that more that $3,000 is involved. Moreover, in its petition for removal, defendant states the facts on which it avers that the matter in dispute exceeds the sum of $3,000, exclusive of interest and costs, and this averment is not traversed directly, if at all, in the opposing affidavit of plaintiff. The question of fact was therefore correctly decided in favor of defendant by the state court and the court below. Dishon v. C., N. O. & T. P. Ry. Co., 133 Fed. 471, 66 C. C. A. 345.

To this it may be added that plaintiff's suit is not based on grounds peculiar or personal to himself, but wholly on grounds which are common to all telephone subscribers in Hartsville. He asserts and seeks to enforce the continuing obligation of defendant to furnish telephone service at the old contract rates, and thus puts in issue the right of defendant to any increase of charges above the contract limitation. In the nature of the case this involves, to a substantial and perhaps serious extent, the value of defendant's Hartsville plant and the earning capacity of its Hartsville exchange. And the force of this suggestion is multiplied when it is borne in mind that the sole defense set up is the order of the Railroad Commission. Stated in a word, the situation is this: If the Commission's order is valid, plaintiff has no case; if invalid, the telephone company has no defense. Thus the validity of that order is the real matter in controversy, and that matter obviously involves many times the jurisdictional amount. However, it is not necessary to decide whether this may be taken into account for the purpose now in hand, since we are of opinion, for the other reasons stated, that the trial court was clearly right in denying the motion to remand.

[5] This brings us to consider the commission's order and the grounds upon which it is claimed to be invalid. The first objection is based on the following proviso in section 3161:

"Provided, that in cities and towns where franchises have been granted by any city or town, to operate and maintain a telephone exchange or exchanges and the rates and tolls are fixed in any such franchise so granted,

nothing herein shall permit any increase in the rates and tolls so fixed for service now furnished whether local or otherwise, except by agreement, with the municipal authorities, in any such city or town and the subscribers."

But this in terms and manifest intent is limited to franchise contracts theretofore made and then in force, and has no application to the contract in suit, which was not entered into until some twelve years afterwards. That this objection is without merit is too obvious for argument.

[6] Another objection is based on a further proviso in section 3161, which reads as follows:

"Provided, further, that except by agreement with the subscriber, no change shall be made in any existing rates without a hearing by said commission which shall be had at such time and place as shall be designated by said commission most convenient to the parties interested, and of which the said commission shall publish a notice in at least one newspaper most likely to give notice to the parties interested, once a week for at least four weeks."

It is undisputed that notice of hearing on defendant's petition was published once a week for four weeks prior to the hearing in the four daily newspapers of widest circulation in the state. It was not published in the Hartsville paper, and plaintiff says he had no notice or knowledge of the proceeding until after the commission made its order. His contention seems to be that as to him the contract rates could not be changed unless he was made a party to the proceeding and personally notified of the time and place of hearing. The mere statement of the proposition refutes it. The proviso does not require notice to the telephone user, or to the town with which a contract for telephone service may have been made; it only requires that notice be published "in at least one newspaper most likely to give notice to the parties"—that is, the persons whose interests may be affected by an order of the commission. In this case the application covered rates generally throughout the state, and it cannot be doubted that appropriate publication was in newspapers of general circulation. The publication actually made was ample compliance with the statute, and the order in question is not invalid for failure to give notice of hearing in the Hartsville paper. Union Dry Goods Co. v. Georgia Public Service Corporation, 145 Ga. 658, 89 S. E. 779.

[7] As to this and the remaining objections, charging the impairment of contract obligations and want of due process of law, it is enough to say that they are conclusively answered by numerous decisions of the Supreme Court. Directly in point, and leaving nothing to be said, are the Georgia case, supra, and cases referred to and quoted from in the opinion. 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420.

"These decisions," says Mr. Justice Clarke, "a few from many to like effect, should suffice to satisfy the most skeptical or belated investigator that the right of private contract must yield to the exigencies of the public welfare when determined in an appropriate manner by the authority of the state."

The order under review is valid, and the decree appealed from will be affirmed.