## ELISCU et al. v. PARAMOUNT PICTURES, Inc., et al.

District Court, S. D. California,
Central Division.

Sept. 30, 1947.

Harold A. Pendler and Charles J. Katz, both of Los Angeles, Cal., for plaintiffs.

Milton H. Schwartz, of Loeb & Loeb, of Los Angeles, Cal., for defendant Samuel Goldwyn.

O'Melveny & Myers, Homer I. Mitchell, and W. B. Carman, all of Los Angeles, Cal., for defendant, Paramount Pictures, Inc.

J. F. T. O'CONNER, District Judge.

The complaint in the above entitled action was filed in the Superior Court in and for the County of Los Angeles, State of

California, on July 2, 1946. Named as defendants were: Paramount Pictures, Inc., a corporation; Samuel Goldwyn Productions, Inc., a corporation; Goldwyn Pictures Corporation, a corporation; Samuel Goldwyn Studios, a corporation; Samuel Goldwyn, Inc., a corporation; One Doe; Two Doe. The suit is of a civil nature, alleging plagiarism.

Paramount Pictures, Inc., is a corporation organized and existing under the laws of the State of New York, and is a citizen and resident of that state. All of the other corporate defendants are citizens and residents of the State of California.

On March 6, 1947, the attorneys for the plaintiffs entered a dismissal of the action as to all of the defendants save and except Paramount Pictures, Inc. Defendants One Doe and Two Doe were fictitious defendants. The record is silent as to service on the Does.

On March 4, 1947, the plaintiffs filed a notice of motion for leave to file a supplemental complaint, and issue summons thereon. This motion was noticed for hearing for March 19, 1947. The plaintiffs requested the State Court to add the name: Samuel Goldwyn, and John Doe I, John Doe II, John Doe III, and Doe Corporation I and Doe Corporation II, as defendants. No action was taken by the State Court on the plaintiffs' motion for leave to file and serve their supplemental first amended complaint. The complaint prays for $300,000 in damages.

One hour prior to the time of hearing the motion in the Superior Court, defendant, Paramount, filed its petition for removal of the action to the United States District Court, served notice upon plaintiffs' attorneys, and served points and authorities in support of its petition. The notice was served on the plaintiffs' attorneys seventeen minutes prior to the time said petition had been noticed for hearing in Department I of the Superior Court. The Superior Court ordered removal of the action to the United States District Court, leaving undetermined the plaintiffs' motion to file their supplemental complaint. After the removal the United States District Court granted this motion and the supplemental amended complaint was filed in this Court.

Samuel Goldwyn, during all of the times mentioned, was, and is, a resident and citizen of the County of Los Angeles, State of California. The facts stated are undisputed. The sole question for the determination of this Court is: "Has the United States District Court jurisdiction—do the facts justify a removal of the cause of action from the State Court to the United States District Court?"

The plaintiffs, in their arguments for remand, contend:

(1) That the service of the notice of transfer was too brief.

(2) That this Court should examine all of the proceedings in the Superior Court.

(3) That the Superior Court should have ruled on the motion pending to amend their complaint which, if allowed, would have denied the defendant, Paramount, the right to remove the cause to the United States District Court.

(4) The order of the District Court allowing the supplemental complaint to be filed deprived the District Court of jurisdiction for the reason that the action was then against two defendants, one a resident and citizen of New York, and the other a resident and citizen of the State of California.

The law is clear on each of these propositions.

■ (1) There is no statute or rule requiring that any particular period of time must elapse between the service of notice and the filing of petition and bond. See 28 U.S.C.A. §§ 71, 72. Neither Congress by statute, nor the Supreme Court by rule, found it necessary to fix any particular time. The Supreme Court has given consideration to proceedings with reference to removal when the original Rules of Civil Procedure were adopted, and also the Amendments, 28 U.S.C.A. following section 723c. See rule 81(c), Federal Rules of Civil Procedure and Amendments thereto; 36 C.J.S., Federal, Courts, § 253. Note 52, page 161.

In re Miller v. Southern Bell Telephone & Telegraph Co., 1922, 4 Cir., 279 F. 806:

The notice in question was served only an hour or two before the bond and petition were filed, which plaintiff contended was

practically the same as no notice at all. The court found adversely to the contention.

In re Spriggs v. Associated Press et al., D.C., 55 F.Supp. 385:

The court affirmed its holding in Milliken v. Transcontinental Oil Company, D.C., 55 F.Supp. 381, where the court held that any notice which is prior in time to the filing is sufficient to satisfy the statute. Citing cases.

There is no particular time to advise opposing party of the removal proceedings.

■ (2) The court has examined all of the proceedings in the Superior Court. The crucial point is the actual condition of the pleadings at the moment the notice of removal and bond were filed. An examination of the record shows clearly that at that very time there was only one defendant, the Paramount Company, a resident and citizen of New York. Woerter v. Orr et al., 10 Cir., 127 F.2d 969.

See 54 C.J. page 285, sec. 175b:

■■ "Where plaintiff voluntarily dismisses or discontinues as to a defendant or defendants whose presence prevents removal, the suit thereupon becomes removable where the necessary diversity exists between plaintiff and the remaining defendant or defendants, and the other jurisdictional requisites are present. The rule is otherwise, however, in the case of a disposition of the suit as to the defendant or defendants whose presence prevents removal, otherwise than by the voluntary act of plaintiff, as, for example, where there is an involuntary dismissal or nonsuit, a directed verdict, the sustaining of a demurrer to the evidence, or a judgment of reversal on appeal.

"Failure to service process or to bring defendant into court.

"While the mere failure to serve process on the defendant or defendants whose presence prevents removal does not, it seems, render the suit removable where there was an attempted service, according to some cases where plaintiff fails to serve process upon, or otherwise fails to bring into court, the defendant or defendants whose presence as a party would prevent removal, and proceeds or elects to proceed against the other defendant or defendants alone, the suit is removable provided there is the required diversity in respect of such other defendant or defendants and the other jurisdictional requisites are present, and in some cases a like rule permitting removal has been applied even where there is nothing to show an election to proceed against such other defendant or defendants, but the contrary view has been taken, and it has apparently been held that such failure does not render the suit removable even where plaintiff has proceeded against such other defendant or defendants." See cases in footnote.[1]

■ (3) Immediately upon the filing of the proper notice and bond for removal, the State Court was deprived of jurisdiction and, hence it had no power to proceed and determine the motion pending before it.

■ (4) The District Court, in permitting plaintiffs to file an amended complaint wherein Samuel Goldwyn, a resident and citizen of the County of Los Angeles, State of California, was named a defendant, did not deprive the District Court of jurisdiction.

Pullman v. Jenkins, 305 U. S. 534, at page 537: 59 S.Ct. 347, at page 349, 83 L.Ed 334;

"The second amended complaint should not have been considered in determining the right to remove, which in a case like the present one was to be determined according to the plaintiffs' pleading at the time of the petition for removal." The opinion by Chief Justice Hughes cites the following cases: Barney v. Latham, 103 U. S. 205, 213, 216, 26 L.Ed. 514; Graves v. Corbin,

1 Madisonville Traction Co. v. Bernard Mining Company, 196 U.S. 239, 244, 245, 25 S.Ct. 251, 49 L.Ed. 462; New Orleans, M. & T. R. Co. v. State of Mississippi, 102 U.S. 135, 141, 26 L.Ed. 96; Baltimore & O. R. Co. v. Koontz, 104 U. S. 5, 14, 26 L.Ed. 643; National S. S. Company v. Tugmen, 106 U.S. 118, 122, 1 S.Ct. 58, 27 L.Ed. 87; St. Paul & Chicago Ry. Co. v. McLean, 108 U.S. 212, 216, 2 S.Ct. 498, 27 L.Ed. 703; Crehore v. Ohio & M. Ry. Co., 131 U.S. 240, 243, 9 S.Ct. 692, 33 L.Ed. 144; Kern v. Huidekoper, 103 U.S. 485, 493, 26 L.Ed. 354.

132 U.S. 571, 585, 10 S.Ct. 196, 33 L.Ed. 962; Louisville & Nashville R. Co. v. Wangelin, 132 U.S. 599, 601, 10 S.Ct. 203, 33 L.Ed. 473; Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 189, 190, 44 S.Ct. 266, 68 L.Ed. 628; Saint Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294, 295, 58 S.Ct. 586, 82 L.Ed. 845.

The right of removal on the grounds of diversity was first granted by the Judiciary Act of September 24, 1789, 1 Stat. 73, and has been amended several times. It was believed that a non-resident citizen could not obtain justice in a state court because of local prejudice, and hence the law provided that the non-resident citizens could remove the actions to the federal courts. With the interchange of commerce between states, the rapidity of travel, communication, the telegraph, telephone and radio in the more than a century and a half that has passed, since the Judiciary Act, changing the life of the nation from isolated communities to a composite whole, no one would seriously contend today that there was any prejudice in any state court in the nation which would deprive a non-resident of a fair trial in tort or contract actions. Criminal actions cannot be removed. Judge William Denman, United States Circuit Judge, Ninth Circuit, presented to the 1943 Annual Conference of United States Judges of the Ninth Circuit, in San Francisco, a resolution to abolish the diversity of citizenship jurisdiction of the federal courts. This resolution was adopted by a vote of fifteen, and one against it, and subsequently five other judges of the Circuit have agreed to the proposal. The resolution was passed in connection with Senate Bill 1548, repealing the Enabling Act conferring diversity of citizenship jurisdiction on the District Courts. 28 U.S.C.A. § 41(1). Judge Denman said in his opening remarks:

"Mr Chairman, my brethren of the bench, and members of the bar: The resolution I am proposing for your consideration is:

"Resolved by the Conference of September, 1943, of the Federal Judges and Bar of the Ninth Circuit that Congress repeal the legislation enabling litigants to sue in the District Courts of the United States in cases between citizens of different states.

"I need not stress to this body that the constitution does not impose this jurisdiction on the federal courts. As early as in 1799 in the case of Turner v. Bank of North America, 4 Dall. 6, 10, [1 L.Ed. 718], the necessity for the derivation from Congress of such jurisdiction is stated in a colloquy between Chief Justice Ellsworth and Justice Chase. This has been consistently held by the Supreme Court since that time.

"Under 28 U.S.C.A. § 449, Congress asks our aid in calling us together 'for the purpose of considering the state of the business of the courts and advising ways and means of improving the administration of justice within the circuit.'

"What I desire to bring before us is a 'means of improving the administration of justice' which, it is submitted, will remove two great evils, the one to civil litigants and the other to our judicial enforcement of the laws of Congress."

In a learned discussion, Judge Denman then treats the subjects under three main heads:

"I. Injustice to litigants from the diversity jurisdiction.

"(a) Volume of diversity cases.

"(b) The denial of equal protection of the law to litigants whose corporate opponents drag them from the state courts with their lessor vote verdicts to the unanimous verdicts of the federal courts.

"(c) Increasingly large number of diversity cases not reaching the dockets because of inequitable forced settlements from litigants distant from the federal courts.

"(d) The rapid expansion of the diversity evil in metropolitan centers near the federal courts.

"(e) Outworn and inconsistent arguments of the foreign corporations and large business interests.

"II. Injury to the federal courts, including the Supreme Court, from the diversity jurisdiction.

"(a) The impairment of the administration of federal laws with their recent enormous expansion of regulatory legislation.

"(b) Futility of federal adjudication of states law since Erie R. Co. v. Tompkins,

[304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188], and the abuses that case makes possible in the diversity jurisdiction.

"III. Recent legislation shows Congress is now responsive to the need of the courts and the strong likelihood of the judges persuading it to abolish the diversity jurisdiction."

The learned jurist said:

"The valuable statistics of Director Chandler's office show with respect to civil litigation that in the last four fiscal years ending June 30, 1943, there were filed in the 84 district courts 27,141 civil cases based solely upon diversity of citizenship. This was 23.9-plus% of all the 113,423 civil cases there filed, both governmental and private." and:

"A chief reason for the removal by foreign corporations of such cases is escape from the eight, nine and ten vote juries in five of the states of this circuit. In civil cases Arizona, California and Idaho require a nine juror vote for a verdict; Montana, eight, and Washington ten. One of the most persuasive arguments of settlor for a foreign corporation is 'We only need one vote to hang the jury in the Federal court, where we can take you; and, besides, in the Federal courts we are not required to put up the jury fees and expenses.'

"When the judiciary act was passed in 1789 creating the diversity jurisdiction, Congress could not have conceived such a change in the jury system as with the more modern eight, nine and ten-vote jury states. If the diversity statute were offered as new legislation today, is it conceivable that Congress would pass it over what would be the united protests of these states?"

Judge Denman points out further the distance and the great injustice to litigants and witnesses when cases are transferred from a local court to the federal court. He then points out the fallacy of the opposition. Commenting on Erie R. Co. v. Tompkins, Judge Denman said:

"For over 90 years and until the decision in Erie R. Co. v. Tompkins, 304 U.S. 64 [58 SCt. 817, 82 L.Ed. 1188] there was developed in the Federal courts a body of Federal law interpreting the rights arising solely under state laws, and there were Federal judges who felt that there was no deprivation to a litigant to compel him to come in to their tribunals with their superior capacity to adjudicate a state law issue. All that has now disappeared. * * *

"Furthermore and, as Circuit Judge Healy has shown, of great importance to our profession, there is another form of abuse of the diversity jurisdiction which could not have been considered by the Congress in 1938 and which perpetuates bad law as well as these other injustices to litigants. An intermediate court of a state decides a principle of state law of doubtful validity. It seems likely to be overruled by the highest appellate court of the state. There may be a suspicion that a particular case with wrongly persuasive facts may have been chosen for the very purpose of establishing the principle.

"A litigant, with the diversity right and having a case dependent on that principle, will bring his suit in the Federal court or have it transferred there to obtain its benefit before reversal by the higher state court. Erie R. Co. v. Tompkins, as construed in West v. American Telephone & Telegraph Co., 311 U.S. 223, 238, [61 S.Ct. 179, 184, 85 L.Ed. 139, 132 A.L.R. 956] compels our court to decide it in his favor however 'desirable it may believe it to be' to decide otherwise and 'even though it may think that the state Supreme Court may establish a different rule in some future litigation'."

Judge Denman's persuasive argument has never been answered.

Judge Leon Yankwich said: "A woman slips on a banana peel in a corner grocery store and lands in the Federal court."

The jurors, both in the state and in the federal courts are selected from the same general locality, and no one would contend that the state judges are not just as able to try these issues as are the federal judges. It is the opinion of this court that the entire matter should be re-examined by Congress to effect greater efficiency in the federal administration of justice, in clearing the federal dockets.

In California civil actions, the party demanding a jury trial must deposit $24 jury

fees for the first day and pay the mileage of approximately $8 to $10; and from then on if he desires to continue the jury he must pay the jury fees daily unless by stipulation the opposing parties have agreed to share the expense of the jury; if no stipulation has been entered, then at the end of the litigation the prevailing party adds the jury expense to his costs, to be paid by the losing party. Section 4300f, Cal. Political Code.

If a case is removed from the state court, the federal treasury pays all of the jury fees.

The motion to remand is denied.

An exception is allowed the plaintiffs.