84 U.S. 508
 21 L.Ed. 705
 17 Wall. 508
 PACKET COMPANY
v.
McCUE.
 October Term, 1873
 
 ERROR to the Circuit Court for the Eastern District of Wisconsin. The case was thus:
 Patrick McCue was a common laboring man, living in Prairie du Chien, Wisconsin, and employed in the railroad warehouse in that place. On the evening of the 11th of July, 1868, the steamer War Eagle, owned by the Northwestern Packet Company, arrived at the landing in Prairie du Chien for the purpose of taking freight from the warehouse. Being short of hands, the mate of the boat went to the warehouse, and there employed McCue and four or five other persons to assist in carrying freight from the warehouse and putting it on board the boat. This employment continued about two hours and a half, at the end of which time McCue and the rest were told to go to 'the office' upon the boat (the packet company having no office on shore for the purpose of making such payments) and receive their pay.
 They proceeded there accordingly, were paid, and then started to go ashore. As McCue was going ashore, the men on board the boat pulled in the gangway plank while he was on it. He was thus thrown down against the dock and injured, and a few days afterwards died from the injury thus received.
 Hereupon Mary McCue, his widow and administratrix, brought suit in the court below, under a statute of Wisconsin, to recover damages for the injuries which he had sustained.
 The marr. alleged that McCue had never before been, either generally or at intervals, a servant of the packet company, and that at the time when the injuries occurred and the cause of action accrued he was not so; but that contrariwise he had been employed by the company to work for it on this occasion alone, and 'for a short space of time, to wit, for the space of one hour;' that this time had elapsed; that the work had been done, and that McCue had been paid for it, and that after all this, and after the relation of master and servant had thus ceased, and McCue was attempting to get off the boat, and using due care, &c., 'the defendant and its agents then and there,' regardless of their duty, recklessly and without any reasonable cause, pulled in and from under his feet, &c., the gangway plank, &c., by which he fell and was injured, &c.
 The defendant pleaded not guilty.
 There was no doubt from the evidence that McCue was without fault, and that the injuries which caused his death were owing to the reckless carelessness of the servants of the packet company.
 On the trial it appeared that McCue had before been occasionally employed by the packet company in the same way in which he had now been; but there did not seem to be any evidence that he was in their general employment: and this was the first time in the year 1868 in which he had been employed in this sort of work by the company.
 The counsel of the packet company insisted, as the hiring was in the warehouse, as McCue had proceeded thence, as the freight was to be carried thence, and as the packet company had no office on shore or anywhere else than the office upon the boat, where McCue could be paid, that his relationship to his employers had not terminated by the simple fact of his getting his money at the office on the boat, but, on the contrary, continued until he got back to the warehouse, or at least and rather until he had got off the boat; that until such latter time he was the servant of the company, and that the injuries done to him having been done to him by his fellow-servants of the company he could not recover from their common master, the packet company.
 The counsel of the company therefore requested the court to charge according to this view, and as matter of law upon the conceded facts that the plaintiff could not recover.
 The court declined so to charge, and charged thus:
 'McCue had been occasionally employed by the defendants' boats in the way in which he was in this instance; but there does not seem to be any evidence to show that he was in their general employment, and in this particular year it would appear that this was the first time he had been employed in this way, so that he was employed for a special purpose, which being accomplished, the agreement or contract ceased.
 'The contract was made in the warehouse, the freight was there, the execution of the contract began there, and as soon as the last portion of the freight was carried on board of the boat, the contract terminated, unless, indeed, it continued because he was to be paid off and had the right to go ashore from the boat, and to be provided with the proper means of going ashore, so that in one sense it is true, I suppose, that the contract began on shore and was terminated by the act of going on shore by McCue.
 'At the same time it may also be said that as soon as he did the last work he was required to do, and was paid off, that he was after that his own master with respect to the contract made between them; that then it was optional with him to do just as he chose.
 'Therefore it will be left to the jury to say whether there was the relation of servant and principal or master, as between the deceased McCue and the defendant, at the time of the injury. And I am not now prepared to say, even if it were true that the relation of servant and master did subsist, that then the action could not be maintained, and I would like to have you find, gentlemen (inasmuch as it may be a material point, and of service hereafter), whether, as a matter of fact, there was or not a termination of the employment between the company and the deceased prior to or at the time of the injury. The counsel for the defendant insists that this is a question of law under the conceded facts; that, inasmuch as soon as McCue was paid off he immediately proceeded to go on shore and was in the act of going on shore, that constituted a part of the service. But as the court thinks, for the reason that as soon as paid off, McCue was his own master, and had the entire control and disposition of himself, to remain on board or go ashore, just as he pleased, in one aspect it may be said that the service was terminated. That question, however, the court leaves to the jury, and asks them to find what the fact is, from the evidence, on this point.
 'Then, gentlemen, leaving the questions of fact to the jury, it will be for the jury to say under the evidence whether the plaintiff has made out his case as stated in the declaration. If the service was terminated and this injury was the result of the negligence of the servants of the defendant, then the plaintiff may recover.'
 The jury having found a verdict of $2800 for the plaintiff, and judgment having gone accordingly, the packet company brought the case here on exceptions to the refusal to charge as requested, and to those parts of the charge within brackets, as given.
 
 Mr. J. P. C. Cottrill, for the plaintiff in error (a brief of Mr. J. W. Cary being filed on the same side):
 
 1. A master is not responsible to those in his employ for injuries resulting from the negligence of a fellow-servant engaged in the same general business; and this is so although the grades of the servants are different, and the person injured is inferior in rank and subject to the directions and general control of him by whose act the injury is caused. Neither is it necessary that the servants—the one that suffers and the one that causes the injury—should be at the time engaged in the same operation or particular work. It is enough that they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties and services tending to accomplish the same general purposes. This rule, in the full extent in which we state it, is one supported by authorities perfectly known to all. Its application to this case is plain, if the relationship of McCue was not terminated by the act of his receiving his pay at the office on the boat; the captain's office, we suppose.
 2. It was not so terminated. The engagement with McCue was on shore. His relation of servant there made continued until be finally got back to shore. If not, what relation did he sustain to the owner of the boat between the moment that he got his pay and that in which he was in the act of finally going ashore? He was not a passenger. He was not a trespasser. Having lawfully entered upon the boat as a servant, and being required to leave it at the end of the service, he would still be a servant until he had finally quit the boat. One of the risks which he assumed in entering upon his employment was his passage over the gangplank, in going to and from the boat, in loading the freight. Can it be said that he did not assume this risk in passing over it, when finally leaving the boat, as much as he did at any other time when passing over the same plank, in the course of his employment? Those in charge of the boat were in duty bound to permit him to go ashore after he had finished carrying freight. They were bound to furnish him with the means of going ashore. And he was himself bound by the contract which he had made to go ashore. He could not have remained on the boat under the contract which he had made, and to have been entitled to remain there he would have been obliged to make some other contract. His contract of service, therefore, did not terminate until he got ashore.
 3. The court left it to the jury to determine as a question of fact whether or not McCue, at the time he was injured, was a servant of the packet company; whether there was or not a termination of the employment between him and it prior to or at the time of the injury.
 This was an error. The question was purely one of law. The facts were all undisputed and conceded. It was conceded that McCue was hired by the mate on shore to assist the crew in carrying freight from the warehouse to and upon the boat over the plank, and that he did so assist; that as soon as he deposited his last load of freight on the boat, he was directed to go to the office on the boat and get his pay; that he went and got his pay and immediately thereafter started to leave the boat by passing over the plank, and that while he was upon it, passing to the shore, it was hauled in by the crew and he was thrown against the dock and injured. It was further undisputed that the packet company had no office or place on shore for paying its servants, and that the only place for paying them was at the office on the boat. So of all the facts; all were undisputed and conceded. Now, on such a case, it was the duty of the court to determine as a question of law what the relation was existing between the packet company and McCue at the time he was injured, and it was error to leave this question to the jury.*
 Messrs. Matthew Hale Carpenter and G. W. Lakin, contra.
 Mr. Justice DAVIS delivered the opinion of the court.
 
 
 1
 It is insisted on the part of the plaintiff in error that a master is not responsible to a servant for injuries caused by the negligence or misconduct of a fellow-servant engaged in the same general business. Whether this general proposition be true or not it is not necessary to determine in the state of this record. It is conceded, if the employment of McCue by the company terminated before the injury complained of was suffered, that the company is liable, and this the jury have found to be the fact.
 
 
 2
 But it is said it was the province of the court, and not the jury, to determine the point of time at which the service was ended; that as the facts were undisputed, it was a question of law, and the court should have told the jury the relation of master and servant subsisted when the accident happened.
 
 
 3
 We do not think so. One of the theories on which the suit was prosecuted was that McCue's special employment had ceased when he was injured. This theory was resisted by the defence, and the court, not taking upon itself to determine as an absolute proposition when the employment terminated, left it to the jury to find how the fact was. This ruling, in our opinion, was correct. It was for the jury to say, from the nature of the employment, the manner of engaging the hands, the usual mode of transacting such a business, and the other circumstances of the case, whether the service had or had not ceased at the time of the accident. The point was submitted fairly to the jury, with no more comments than the evidence justified. It was argued by the plaintiff in error that the employment of necessity terminated on the land, because it was there McCue was engaged to do the work, and he had the right to be provided with the proper means of reaching it from the boat. On the contrary, the defendant in error contended the special service ceased when McCue had finished his work and was paid off; that after this he was not subject to the control or direction of the officers of the boat, but at liberty to stay on the boat or go off as he pleased. The jury took this latter view of the relation of the parties, and we cannot say that they did not decide correctly. At any rate, their decision on a question of fact is not subject to review in this court. The defence at the best was a narrow one, and in our opinion more technical than just.
 
 
 4
 JUDGMENT AFFIRMED.
 
 
 5
 [See Railroad Company v. Fort, infra, p. 553.]
 
 
 
 *
 Parks v. Ross, 11 Howard, 372; Besson v. Southard, 10 New York, 240; Storey v. Brennan, 15 Id. 526; People v. Cook, 4 Selden, 67.