## GILMORE v. NORTHERN PAC. RY. CO.

*(Circuit Court, D. Oregon. January 4, 1884.)*

1. INJURY CAUSED BY NEGLIGENCE OF FELLOW-SERVANTS.

The rule first suggested in *Priestly* v. *Fowler*, 3 Mees. & W. (1837,) 1, that a master who has exercised due care and skill in the employment and retention of his servants is not responsible for an injury sustained by one of them in the course of his employment by the negligence of another, however distinct the grade or different the labor of such servants or how widely separated the locality of their several employments, is being modified by the course of judicial opinion and decision so as to meet the ends of justice in cases since arising of corporations and others engaged in varied and widely extended operations under one nominal and invisible head, but in reality divided into separate parts or divisions, under the direction and control of local bosses, superintendents, or heads of departments, who to all intents and purposes represent and stand for the corporation, with practically unqualified power to employ, direct, and discharge workmen, and to provide the necessary material and appliances for their convenient and safe employment.

2. WHEN FELLOW-SERVANT STANDS FOR MASTER.

It seems well established that a master is responsible to his servant for an injury sustained by him, without his fault, in consequence of the negligence of a fellow-servant, (1) when the latter, having authority over the former, orders him to do an act not within the scope of his employment, whereby he is exposed to a danger not contemplated in his contract of service, and he is injured in so doing; (2) where the master has charged the latter with the duty of providing proper material and appliances for carrying on a work in which he is personally engaged with the former or not, and by the neglect to do so he is injured.

3. CASE IN JUDGMENT.

In February, 1883, the Northern Pacific Railway was engaged in constructing its road through western Montana, and had many gangs of men, numbering not less than fifty each, at work on the line of the route, at from three to five miles

apart, under the control and direction of foremen or local bosses, with the power to employ and discharge, subject themselves to the control of a general superintendent and assistant, who passed along the route and inspected the camps at certain periods. Some of these gangs used giant powder for blasting the rocks and frozen earth, and in such case the foreman was charged specially with the duty of handling the powder and thawing it when frozen. The general superintendent was aware of the danger of thawing powder before a fire, and had given general notice not to do it, and provided a safe appliance, called a "heater," for the purpose, subject to the requisition of the local boss. The plaintiff was employed as a common laborer in one of these gangs, where powder was always thawed without a "heater" before the fire, and while assisting in so thawing powder by direction of the local boss, was injured by its explosion. *Held*, that the local boss, so far, stood in the place of the defendant, and that the neglect of the former to obtain and use the proper appliance for thawing powder, and his directing the plaintiff to assist in thawing powder without the security of such appliance, were wrongful acts for which the defendant is responsible to the plaintiff so far as he was injured thereby.

Action for Injury to the Person.

*William H. Effinger* and *Arthur C. Emmons,* for plaintiff.

*Rufus Mallory,* for defendant.

DEADY, J.   This action is brought by the plaintiff, a citizen of Oregon, against the defendant, a corporation formed under a law of the United States, to recover the sum of $25,000 damages for serious bodily injuries sustained by him on February 13, 1883, at Horse Plains, Missoula county, Montana, while in the employ of the defendant as a laborer in and about the construction of its railway, by reason of the negligence and unskillfulness of the defendant in attempting to thaw a quantity of giant powder before an open fire, whereby the same was suddenly exploded; and without any negligence or fault on the part of the plaintiff. The answer of the defendant contains a denial of all the allegations of the complaint and a plea or defense that the injury suffered by the plaintiff "was caused and occasioned" by his own "fault, carelessness, and negligence," and that of "his co-laborers and fellow-servants;" and without the fault of the defendant. The case was tried with a jury on November 21st, and there was a verdict found for the plaintiff in the sum of $4,500. The defendant now moves for a new trial on the ground—(1) insufficiency of the evidence to justify the verdict; and (2) error in law occurring at the trial. On the argument of the motion, the first ground was abandoned, it being admitted that the injury to the plaintiff was the direct result of the negligence of the foreman; and the only point made in support of it is that the court erred in not instructing the jury as requested by the defendant, that if the defendant exercised reasonable care in the employment and retention of Cortin as foreman, and provided him or placed at his control a safe appliance for thawing giant powder, of the most approved kind, and one that is in general use for that purpose, the plaintiff is not entitled to recover; or, in other words, that Cortin, the boss of the gang in which the plaintiff was at work, was only his fellow-servant, and therefore the defendant is not responsible for any injury sustained by the plaintiff through or by means of such foreman's fault or negligence.

On the trial it appeared from the evidence that the plaintiff is a man about 43 'years of age, accustomed to labor with a pick and shovel, and that he was in the employ of defendant as such laborer from April 7, 1882, to the date of his injury. That a great many gangs of men, numbering 50 or more each, were at this time in the employ of the defendant in this region, engaged in the construction of its road, at points from three to five miles apart, under the direction and control of local bosses, who had the power to employ and discharge the men as they saw proper. That the whole line of work was in the charge of a general superintendent, Mr. J. L. Hallett, and assistants, who traveled along the route at intervals and inspected the condition of the gangs or camps and the character of the work being done by them, and gave such directions to the several bosses concerning the same as was needed. That by some of these gangs giant powder was used for blasting rock and frozen earth, and that in such case the handling of this powder, and particularly the thawing of it, was committed to the special charge of the local boss, who was supposed to have some special qualifications for the trust, and received extra compensation for the skill and risk involved therein. That it being known to the superintendent that it was dangerous to thaw giant powder by placing the sticks or canisters before an open fire, notice was given generally to the bosses not to do it, but to use a "dug-out" or drift in the ground, in which the powder was placed and subjected to a gradual and uniform heat from a fire at the mouth of the cave, which warmed the air within, or a device called a "heater" or "thawer," the same being a galvanized iron kettle weighing from 50 to 75 pounds, with double walls—whereby the powder placed in the body of this vessel and hung over a fire—the space between the walls being filled with water—was subjected to a gradual and uniform heat, so as to prevent a partial or unequal thawing or softening of the mass, and thereby setting a portion of the nitro-glycerine in its composition free from the earthy or other non-explosive matter wherein it was held in absorption, in which state it was very liable to explode from handling or any slight disturbance or concussion. That these "heaters" were provided by the superintendent and stored at a convenient place at the end of the road, from whence they could be obtained by a local boss whenever he desired one; but none was ever furnished to or used in the camp or gang when plaintiff was employed, and Cortin always thawed his powder before an open fire. That on the morning of February 13th, Cortin's gang were engaged in cutting a ditch about a half mile from the line of the road for the purpose of taking water to the tank, when Cortin said to the plaintiff, "Jack, we have to thaw some powder," to which he answered, "Where is 'Old Billy,' the powder-thawer?" when Cortin replied, "I forgot that; do you get some wood and make the fire." And thereupon the plaintiff cut and carried wood from the vicinity and made and kept up the fire, while "Old Billy" and Cortin attended to the thawing of

the powder until some time in the afternoon; and just as the plaintiff was walking away from the fire in the direction of where the rest of the "gang" were working on the ditch, Cortin picked up a stick of the powder, and, as he turned his face from the fire, said, "Is this any way near thawed?" when it exploded in his hand, killing himself and "Old Billy" outright and injuring the plaintiff severely, as by breaking his ribs, severely lacerating the muscles of his arm, breaking the drum of his ear, injuring the sight of one of his eyes and otherwise affecting him, so that he is reduced from the condition of a strong, well man to that of an invalid, who will probably never be able to labor again, or be altogether free from physical pain and inconvenience. That a short time before the explosion Thomas Finnegan, an assistant superintendent, passed along the route, and, as he testifies, "saw the powder being thawed before the fire, and told Cortin to have it removed. That he knew it was contrary to orders, and he would discharge him in the morning," and then passed on without stopping to see that the powder was removed, or, taking any other measures to have it done.

The court instructed the jury, as requested by the defendant, that if the foreman, Cortin, and the plaintiff were both employed in the same gang, in a common employment or service, under the same or a common boss or superintendent, they were fellow-servants, and the defendant is not liable for the negligence of Cortin in the course of this employment, causing injury to the plaintiff, and the fact that Cortin was foreman of the gang does not make the defendant responsible for his acts, as to the plaintiff or other employes in such gang; and added:

"If Cortin was simply the foreman of the gang in which the plaintiff was employed, both working together side by side, the former merely leading in the work and giving the immediate direction to it, in the presence or near vicinity of a common boss or superintendent, then Cortin and the plaintiff were fellow-servants, and the defendant is not responsible for an injury to either, caused by the negligence of the other. But if the work which this gang of men was engaged at was under the practical direction and control of Cortin, subject only to the directions received by him personally from time to time, as the local boss, from an absent or distant superintendent and the occasional and casual oversight of his travelling assistants; if Cortin had the authority to employ and discharge the men in his gang, and direct and control their movements, so far as the work in his charge was concerned; and ordinarily there was no one else present and authorized to superintend or direct the work or the laborers,—then he represented the company for the time being. He stood, so far as it or they are concerned, for the defendant, and his negligence is so far the negligence of the defendant, and the latter is responsible to the plaintiff therefor to the extent he was injured in consequence thereof."

Upon this statement of the law the case was submitted to the jury to say whether Cortin was a mere fellow-servant of the plaintiff or not, with the further instruction that if they found he was, their verdict must be for the defendant, but if not, then it should be for the

plaintiff in such sum as they might find he was entitled to upon the evidence, under the instructions and suggestions of the court. Beginning with *Priestley* v. *Fowler*, 3 Mees. & W. (England, 1837,) 1, and *Murray* v. *Railroad Co.* 1 McMul. (S. C. 1845,) 385, and *Farwell* v. *Boston & W. R. Corp.* 4 Metc. (Mass. 1842,) 49, the rule was established that a master or employer was not responsible for an injury sustained by his servant or employe in consequence of the negligence of a fellow-servant, as to the employment and retention of whom the former had exercised due diligence and care; but that the liability to injury by such means was one of the risks incident to the employment, and that a "fellow-servant," within the meaning of the rule, were all persons employed or engaged in the same common service, from the highest to the lowest, and who are subject to the same general control. Wood. Mast. & Serv. § 427. But in the progress of society and the general substitution of ideal and invisible masters and employers for the actual and visible ones of former times, in the form of corporations engaged in varied, detached, and widespread operations, as in the construction and working of long lines of railway, it has been seen and felt that the universal application of the rule often resulted in hardship and injustice. Accordingly, the tendency of the more modern authorities appears to be in the direction of such a modification and limitation of the rule as shall eventually devolve upon the employer, under these circumstances, a due and just share of the responsibility for the lives and limbs of the persons in its employ.

In the supreme court of the United States the rule has not only been materially limited, but sharply questioned. *Packet Co.* v. *McCue*, 17 Wall. 508; *Railroad Co.* v. *Fort*, Id. 553. And in several of the states it has been much relaxed. *Louisville & N. R. Co.* v. *Collins*, 2 Duv. (Ky.) 114; *Flike* v. *B. & A. R. Co.* 53 N. Y. 549; *Laning* v. *N. Y. C. R. Co.* 49 N. Y. 521; *Brickner* v. *N. Y. C. R. Co.* 2 Lans. (N. Y.) 506; S. C. 49 N. Y. 672; *Lalor* v. *Chicago, etc., R. Co.* 52 Ill. 401; *Nashville, etc., R. Co.* v. *Carroll*, 6 Heisk. (Tenn.) 348; *Ford* v. *Fitchburg R. Co.* 110 Mass. 240; *Cleveland, etc., R. Co.* v. *Keary*, 3 Ohio St. 201; *Mullan* v. *Steam-ship Co.* 78 Pa. St. 26. By reference to these and other like cases it will be seen that at least two points in qualification of this rule may be considered well established: (1) That when a servant is directed by a fellow-servant, having authority over him, to do an act beyond the scope of his employment, which exposes him to a danger not contemplated in the contract of service, and while so doing he is injured, without fault of his own; or (2) where a servant is authorized and required by his employment to furnish or provide suitable material or appliances for the work in which his fellow-servants are engaged, whether under his special direction or otherwise, and one of them is injured by reason of his neglect or omission in this respect, the common master or employer is responsible in either case.

The evidence in this case shows that the defendant had committed to Cortin the authority to employ, direct, and discharge the men in his gang, and had also conferred on him the authority, and trusted him to perform the duty, of procuring or ordering from its stores of material a "heater," for the purpose of thawing giant powder in his camp whenever needed. The evidence also tends to show that it was known to the general superintendent and his assistants that it was highly dangerous to thaw giant powder before a fire in this way, where, from the irregular application of the heat, it was liable to soften and relax unequally, and that therefore notice had been given to the local bosses, generally, not to attempt to thaw it in such manner. It is not clear that this notice ever directly reached Cortin, but it is quite certain that no "heater" was ever seen or used in his camp, and that the powder used there was always thawed before a fire, as on this occasion. The plaintiff is comparatively an unskilled man, from the humbler walks of life, and appears to have been altogether ignorant of the danger incident to thawing giant powder in this manner. And, indeed, it is safe to say, that the occult eccentricities of this material, when frozen or being thawed, are not well understood by even the scientific world. Amer. Cyclo. "Explosives."

It is not clear that Cortin had a right, under the circumstances, to order the plaintiff, a common pick-and-shovel laborer, to assist in thawing powder, even with the aid of an application like this "heater;" but to do so without it was clearly wrong, because it subjected him to a serious danger, not within the scope of his employment, and not contemplated in his contract of service. And for the injury sustained by the plaintiff, by means of this wrongful act of one who, according to the better rule of law, stood so far in the place of the defendant, the latter is liable to respond to the former in damages. Again, the work in which Cortin was engaged involved the use of giant powder for blasting, and as incident to this in that climate, the operation of thawing it when frozen.

The evidence of the defendant tends to show that the handling of this powder, including the thawing of the same, was generally committed, as a sort of personal trust, to the local boss, who was supposed to be selected with some reference to his qualifications therefor, and who might select some persons from the gang to assist him thereabout. In selecting persons for this purpose, as a rule, only those who were willing were thus employed. But, if any one refused, as he might, he was liable to be discharged, and probably would be. A part of the duty of the local boss, in this respect, was to provide the appliance of a "heater" wherein to thaw this powder. In this matter, also, he stood in the place of the defendant, and the latter is responsible to the plaintiff for the injury caused by his negligence therein. If Cortin was not aware of his duty in the premises, as he may not have been, he was not qualified for the employment; and if he was aware of it, he willfully disregarded it; and being in either case

so far the representative of the defendant, it is equally responsible for his conduct, whether attributable to ignorance or willfulness.

On the argument it was further contended by counsel for the defendant that, admitting the plaintiff's theory of the law, as to the local boss being the representative of the defendant, yet while the assistant superintendent was at the camp on the day of the explosion, he superseded such boss as such representative, and that said assistant having then and there rebuked Cortin for attempting to thaw powder before the fire, and at the same time gave him an order to remove it, accompanied by a threat that he would discharge him on his return the next morning, the defendant did its duty in the premises, and is not responsible for the consequences of Cortin's disobedience or neglect to obey its order made through the assistant superintendent.

Granting that the assistant was the representative for the time being of the defendant, he should not have left the camp until he saw the powder removed from the fire and the threatened danger averted, instead of which he went his way, leaving the powder before the fire in charge of Cortin, as before he came. If he had even warned the plaintiff of the danger, it might have been sufficient; but his communication with Cortin appears to have been out of the hearing of the men, and only occupied a moment or two as he passed by. Besides, it is not to be forgotten that, on account of the improbability of some material elements of this statement, and the manner of the witness while making it, the jury may well have doubted its correctness, and probably did. In my judgment the presence or conduct of the assistant did not affect the character of the transaction so as to change or modify the right of the plaintiff or the liability of the defendant. If he stood for the defendant while at the camp, he was as negligent then as Cortin was before and afterwards, so that instead of relieving the defendant from responsibility for the plaintiff's injury, he probably enhanced it by adding the weight of his negligence to that of the local boss.

The motion for a new trial is denied.