MOYSE, Respondent, v. NORTHERN PACIFIC RAILWAY
CO. et al., Appellants.

(No. 2,823.)

(Submitted April 11, 1910.   Decided May 2, 1910.)

[108 Pac. 1062.]

*Railroads—Personal Injuries—Master and Servants—When
Relationship Exists—Negligence—Pleading and Proof—As-
sumption of Risk—Measure of Damages—Annuity Tables—
Instructions.*

Personal Injuries — Railroads — Master and Servant — When Relationship
Exists.
1.  *Held*, in an action by a freight conductor against his employer,
brought under section 5251, Revised Codes, making a railroad company
liable for injuries sustained by an employee while employed in the dis-
charge of his duties, through the negligence of any other employees,
that plaintiff who, during the entire time when away from his home
terminal, was subject to be called on duty and required to be within
call, and who, though not required to do so under his contract of em-
ployment, was nevertheless expected to occupy the caboose of his train
at night, was, when injured in a collision while asleep in the caboose
standing on a sidetrack, in the discharge of his duties, and did not
occupy the position of a mere licensee, even though his pay had, for
the time being, ceased and would not begin again until called on duty.
Same—Negligence—Who Liable.
2.  A caboose was placed on a yard track terminating at an excavation,
toward which the track graded sharply.  There was no device to pre-
vent escaping cars from falling into the excavation.  A yard crew
while at work in making up a train placed cars on the track, but failed
to properly secure them by brakes, and in escaping they ran against
the caboose and caused it to fall into the excavation, injuring plain-
tiff—conductor.  *Held*, that the defendant company and the yard fore-
man, whose duty it was to see that proper precautions were observed
in the making up of trains, were liable for the injuries received.
Same—Duty of Master.
3.  Under the circumstances set forth in paragraph 1, *supra,* the rail-
road company was bound to use ordinary care to provide the plaintiff
a reasonably safe place in which to stay and to maintain that condi-
tion, and to that end to see that the yard crew took ordinary precau-
tions *not* to allow cars to escape and collide with the caboose in which
plaintiff was sleeping.
Same—Negligence—Pleading and Proof.
4.  Although several acts of negligence are alleged in the complaint
in a personal injury action, proof of all those alleged is not required;
a recovery will be sustained upon proof of any one or more of them.
Same—Complaint—Pleading and Proof.
5.  An allegation in the complaint that defendants negligently drove
the railroad cars against the caboose in which plaintiff was sleeping
was sustained by evidence tending to show that the cars escaped, the
brakes having been insecurely set.

Same—Assumption of Risk—What Constitutes.

6. While plaintiff (a freight conductor), in sleeping in a caboose while waiting to be called on duty, assumed those risks of injury incident to the handling of cars by the yard crew engaged in the making up of his train which were known to him, he did not assume those which might arise from the negligence of said crew in failing to so securely set the brakes as to prevent them from escaping.

Same—Assumption of Risk.

7. The test to be applied in determining whether a servant assumed a risk is, not whether he exercised reasonable care to discover the danger, but whether the danger was known to him or plainly observable.

Same—Measure of Damages—Mortality Tables—Instructions.

8. Instructions on the measure of damages in a personal injury action, which told the jury that if plaintiff's capacity to earn money had been reduced by reason of his injuries, they should award such a sum as would purchase an annuity equal to the difference in the amount he could earn annually in his then condition, and the amount he could have earned if he had not been injured, having due regard to diminished earning capacity due to advancing age, etc., and that mortality and annuity tables were not to be considered as an absolute basis for their calculations, but should be used as a guide only so far as the facts before them corresponded to those from which the tables were computed, correctly stated the law.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by E. E. Moyse, against the Northern Pacific Railway Company and others. From a judgment for plaintiff, defendants appeal. Affirmed as to two of the defendants, and reversed and remanded, with directions to dismiss the action as to the third defendant.

*Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines,* submitted a brief in behalf of Appellants. *Mr. Wallace* argued the cause orally.

The complaint is framed on the theory of liability to plaintiff, as one of its servants, for injuries received while in the active discharge of his duties in the course of his employment. We insist that, though it is admitted that plaintiff was in the general employ of the company as a conductor, the evidence will not justify any finding that at the time of, or just before, the accident he was engaged in the discharge of any duty of his employment, or in the course thereof; but, on the other hand, it is demonstrated that he had "registered in," been re-

lieved from duty, his pay had ceased, his caboose been turned over to the yard crew, he had been up town all the day before on his own affairs, and that he was not to resume the discharge of his duties, nor was his pay to recommence until he should be "called for duty," and he had not been so called. There is a wide distinction between "employment" and "a servant engaged in the discharge of his duties in the course of his employment." (See Dresser's Employers' Liability, p. 73; *Missouri Pac. Ry.* v. *Mackey,* 33 Kan. 298, 6 Pac. 291; *Atchison, T. & S. F. R. Co.* v. *United States,* 177 Fed. 114.) Whether the alleged servant is drawing pay, while not conclusive, is a test to determine whether the relationship exists at the time of the injury. (*Corbin* v. *American Mills Co.,* 27 Conn. 274, 71 Am. Dec. 63. See, also, on the general proposition above, the following authorities: *Orman* v. *Salvo,* 117 Fed. 233, 54 C. C. A. 265; *Ellsworth* v. *Metheny,* 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389; *Baird* v. *Pettit,* 70 Pa. 477, 484; *Wink* v. *Weiler,* 41 Ill. App. 336; *Neff & Co.* v. *Broom,* 70 Ga. 256; *Baltimore & Ohio R. Co.* v. *State,* 33 Md. 542; *State, Use of Abell,* v. *Western Maryland R. R. Co.,* 63 Md. 433; *Shadoan's Admr.* v. *Railway Co.,* 26 Ky. Law Rep. 828, 82 S. W. 567; *Wilson* v. *Railway Co.,* 130 Ky. 182, 113 S. W. 101.)

It is only in the event Moyse was engaged in the actual discharge of his duties that the railway company would have owed him the primary duty of using reasonable care to make his place of work safe, by protecting the end of the track, which duty the court charged was owing him in this case. And even if he were so then engaged, there was no primary duty owing by the railway to see to it that the switching by Doyle and his crew did not put the employees in peril. (*Pittsburgh Ry. Co.* v. *Lightheiser,* 163 Ind. 247, 71 N. E. 218; *Kimmer* v. *Weber,* 151 N. Y. 417, 56 Am. St. Rep. 630, 45 N. E. 860; 26 Cyc. 1321; *Burns* v. *Sennett,* 99 Cal. 363, 33 Pac. 917; *Anderson* v. *Railroad Co.,* 28 Wash. 467, 68 Pac. 863; *Wilson* v. *Northern Pac. Ry. Co.,* 31 Wash. 67, 71 Pac. 713; *Richmond Co.* v. *Ford,* 94 Va. 627, 27 S. E. 511; *Lundberg* v. *Shevlin Co.,* 68 Minn. 135,

70 N. W. 1078; *Motey* v. *Pickle Marble Co.*, 74 Fed. 154, 20 C. C. A. 366; *The Kensington*, 91 Fed. 681; 2 Labatt on Master and Servant, pp. 1756, 1757, 1760–1762, and cases.)

Accountability for the acts of Whalen, Doyle and the switching crew could only be sustained under the fellow-servant statute. If the relationship of master and servant did not exist, as alleged in the complaint and as stated in the court's charge, at the time of the accident, then Moyse could not avail himself of the provisions of the fellow-servant statute (Rev. Codes, sec. 5251), or hold the company liable for the alleged negligent conduct of Doyle and Whalen or the switching crew. (*Kelly* v. *Northern Pacific Ry. Co.*, 35 Mont. 243, 88 Pac. 1009.) At the time of the accident, Moyse was not engaged in performing any duty that was in any manner connected with the use or operation of the railway, and was, therefore, then not a fellow-servant of any of the employees who were at work. (See *Orman* v. *Salvo, supra; Russell* v. *Oregon S. L. Ry.*, 155 Fed. 22, 83 C. C. A. 618; *Louisville & N. R. Co.* v. *Wade*, 46 Fla. 197, 35 South. 863.)

Assuming that Moyse was at the time of the accident in the discharge of his duties, in the course of his employment, did the company owe him the duty to provide stop-blocks for track 4? We think not. (26 Cyc. 1127, citing *O'Donnell* v. *Railway*, 89 Mich. 174, 50 N. W. 801; *Atchison etc. Ry. Co.* v. *Tindall*, 57 Kan. 719, 48 Pac. 12; see, also, *Finnell* v. *Railway Co.*, 129 N. Y. 669, 29 N. E. 825; *Tuttle* v. *Railway Co.*, 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114.) In *Batterson* v. *Railway*, 53 Mich. 125, 18 N. W. 584, it was held that the failure of a railroad company to keep a sidetrack in such repair as to afford a secure footing does not render it liable for a resulting injury to a brakeman. In the case of *Michigan Cent. Ry.* v. *Austin*, 40 Mich. 247, it was held that the use of worn rails in sidetracks was not negligence. Nor was it negligence on the part of the company in failing to erect stop-blocks at the pit on this sidetrack. (*Chicago etc. Ry. Co.* v. *Driscoll*, 176 Ill. 330, 52 N. E. 921; *Hewitt* v. *Flint etc. Ry.*, 67 Mich. 61, 34 N. W. 659.)

Under the facts of this case, it should have been declared, as a matter of law, that Moyse assumed the risk of the conditions existing at the pit; *i. e.,* lack of blocking or guard at the end of track No. 4.   (1 Labatt on Master and Servant, sec. 274; *Choctaw etc. Ry. Co.* v. *O'Nesky,* 6 Ind. Ter. 180, 90 S. W. 300.)   The lack of guards at the end of the track was patent, and this condition would have been disclosed to him by simple observation.   (*Michigan etc. Railway Co.* v. *Smithson,* 45 Mich. 212, 7 N. W. 794; *Benson* v. *Railway,* 23 R. I. 147, 49 Atl. 689.)   Actual ignorance is not sufficient to charge the master; the ignorance must be excusable.   (*Ragon* v. *Toledo etc. Ry. Co.,* 97 Mich. 265, 37 Am. St. Rep. 336, 56 N. W. 612.)   It should also have been declared, as a matter of law, that he assumed the risk of collision.   (*Jacobs* v. *Railway Co.,* 84 Mich. 299, 47 N. W. 669.)

*Messrs. Walsh & Nolan,* and *Messrs. Miller & O'Connor,* submitted a brief in behalf of Respondent.   *Mr. T. J. Walsh* argued the cause orally.

That plaintiff was, at the time of the accident, in the service of the appellant company, and in the caboose in the course of his employment, and that the members of the switch crew were his fellow-servants, is sustained by the following cases: *St. Louis etc. Ry. Co.* v. *Welch,* 72 Tex. 298, 10 S. W. 529, 2 L. R. A. 839; *International etc. R. Co.* v. *Ryan,* 82 Tex. 565, 18 S. W. 219.   They were referred to, and the principle they announce applied to similar facts, in *Dishon* v. *Cincinnati etc. Ry. Co.,* 126 Fed. 194.   Many of the cases holding that the relation of fellow-servant subsists and that no recovery can be had for the negligence of the train crew are referred to in the opinion in and notes to *Taylor* v. *Bush,* 6 Penne. (Del.) 306, 66 Atl. 884, 12 L. R. A., n. s., 853, 860, in which the argument and research exhibited in the *Dishon Case* are commended and the principle therein announced adopted.   (See, also, *Olson* v. *Andrews,* 168 Mass. 261, 47 N. E. 90; *St. Louis S. W. Ry. Co.* v. *Henson,* 61 Ark. 302, 32 S. W. 1079; *Pugmire* v. *Oregon S. L. R. Co.,* 33 Utah,

27, 126 Am. St. Rep. 805, 92 Pac. 762, 13 L. R. A., n. s., 565, 14 Ann. Cas. 384; *Olson* v. *M. & S. L. R. Co.,* 76 Minn. 149, 78 N. W. 975, 48 L. R. A. 796.)

If respondent was not on duty, he was in the car by the invitation of and under agreement with appellant company, in the course of his employment. He was in the car in accordance with a custom and usage of the business so universally observed, of such long standing as that knowledge of it and acquiescence in it and approval of it by the appellant company may be assumed. That custom entered into and became a part of respondent's contract of employment. Scarcely any contract of employment was ever entered into that was not affected by the customs and usages prevalent in the business to which the employment related. They enter into and become a part of it as binding and effective as any of its express terms. (See *Northern Pac. Ry. Co.* v. *Kempton,* 138 Fed. 992, 71 C. C. A. 246.) Even if the custom were suffered merely for the comfort and convenience of the men, the duty of reasonable care would arise under the authority of one of the leading cases relied on by the appellants. (See *Ellsworth* v. *Metheney,* 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389.)

This appellant company which fitted up the caboose in question for use by its operatives and turned it over to them in the knowledge that others of similar character were habitually used as a sleeping place by crews when away from the home terminal, must be held to have invited the respondent and his associates to use it on the night in question for the same purpose, and to be and remain in and about its yards therein. The following cases will elucidate what is an invitation, as the word is used in the law of the subject being considered: *Sweeney* v. *Old Colony Ry. Co.,* 10 Allen, 368, 87 Am. Dec. 644; *Alabama etc. Ry. Co.* v. *Godfrey,* 156 Ala. 202, 130 Am. St. Rep. 76, 47 South. 185; *Bennett* v. *L. & R. R. Co.,* 102 U. S. 577, 26 L. Ed. 235; *viz.:* that invitation is inferred where there is a common interest or mutual advantage. There certainly was a common interest and a mutual advantage in the utilization by the operatives of the caboose as sleeping quarters when away from home.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by plaintiff for damages for personal injuries. On August 17, 1906, the plaintiff was in the employ of the defendant company as a conductor. The defendant Doyle was the yard foreman of the company, in charge of other employees in the actual discharge of his duties in directing the movement and disposition of cars in the yards of the company at Butte. Defendant Whalen was also in the employ of the company as foreman having general charge of the yards. At the time of the accident plaintiff was in a caboose of the company which stood on a sidetrack in the yards. The main and sidetracks extend east and west. To the west from the point where the caboose was standing, there was an excavation, about twenty-two feet in depth and forty feet in width. The grade of the tracks inclined sharply to the west, so that a car left standing on any of them without having the brakes properly set would of its own weight move toward the excavation. The main line and one of the other tracks crossed the excavation upon a trestle, but the track upon which the caboose was standing ended at its brink. There was at this point no block or other device to prevent a car standing thereon, if it happened to escape, from being precipitated into the excavation. In addition to the foregoing facts it is alleged that the plaintiff was in the caboose in the discharge of his duties; that the defendant company and its foreman Whalen, in the exercise of reasonable care, could have known, and in fact did know, of the existence of the excavation and the facts stated above, but nevertheless failed to obstruct the said track, or to exercise reasonable or any care to prevent a car proceeding along it from falling into the excavation; that while the caboose was standing on the track the defendant company, through its employees Whalen and Doyle, being then engaged in the discharge of their duties, moved a train of cars upon and along the track toward the caboose and toward the excavation; that they negligently permitted these cars to be upon the track without setting the brakes

sufficiently to prevent them from descending by their own weight at a dangerous rate of speed toward and against the caboose, and that they negligently drove the cars against the caboose where the plaintiff then was, with great violence, disconnecting the brakes thereon, and driving it along the track and into the excavation, whereby plaintiff was injured.

The answer of the company admits that plaintiff sustained certain injuries while in the caboose, but denies that he was at the time in the discharge of his duties as employee of the company. It alleges affirmatively that he was guilty of contributory negligence and that he assumed the risk. The separate answer of defendants Whalen and Doyle interposes the same defenses. As to the affirmative defenses there is issue by reply.

The evidence discloses the following: Plaintiff was at the time of his injury forty-one years of age; he was in good health, and had been in railway service for seventeen years, during the last four of which he had been a conductor on the Montana division of the defendant company's railroad. He resided with his family at Livingston. He ran freight trains from Livingston to Helena, Butte, and Billings. On August 16 he brought train No. 56 from Livingston, arriving at Butte at 11:45 P. M. On reaching the yards he "registered in," that is, he delivered his waybills at the telegraph office of the company, and signed the register after noting the time of his arrival, etc. Upon registering in, his pay ceased until he was "called" to make his return trip. It began again thirty minutes before the hour stated for departure in the call. The brakemen were also off active duty as soon as they had set the hand-brakes on the cars and had disconnected the engine. From that time the train, including the caboose, was in charge of the yard crew. By "yard crew" is meant the foreman in charge and his assistants. The term "called" means that, when the train is ready to leave, the call boy tells the crew to get ready to take charge of the train, and informs them of the time of starting. It is customary for a train crew, when away from home terminals, to sleep in their caboose. It is provided with a "bunk" under the cupola, which

is occupied by the conductor, and a "bunk" in the body of the car, fitted up with cushions, which the brakemen occupy. The cushions serve for mattresses. All the members of a crew furnish their necessary bedclothes. This custom had been observed by train crews for seventeen years. After the yard crew take charge of a train they place the caboose at any convenient place in the yard selected by the foreman, unless there is a siding specially designated for it. There was no such siding in the Butte yards. After the train crew had retired to the caboose on the night of the 16th, but while they were still awake, the yard crew took the train away and switched the caboose over to the track upon which it stood at the time of the accident. This is designated by the witnesses as track No. 4, to the north. On the morning of the 17th the plaintiff was informed at the telegraph office that his train would not be ready to leave until early in the morning of the 18th. He and the rest of the crew, two brakemen, spent the day in the city, returning to the caboose about 5 o'clock. At that time an empty gondola car was standing on the track, five or six car-lengths east of the caboose. The latter was standing about twelve car-lengths east from the excavation. A car-length is about thirty-six feet. The excavation had been made by the Butte Electric Street Railway Company through the yards of the defendant company, to provide a crossing for the electric cars under the tracks of the railroad, the intention being to erect a trestle viaduct for all the tracks of the latter. Prior to the beginning of this work the tracks had rested on a solid embankment. The viaduct had been completed in part, but was not of sufficient width to accommodate all the tracks of the railroad company. As already stated, some of them, including the one occupied by the caboose, ended at the brink of the excavation. A week before the 16th, on a prior trip to Butte, the plaintiff had noticed the excavation, and that men were at work in the construction of the viaduct. The telegraph office of the company was some fifty feet west of the excavation, and upon going to the office to register in, on the evening of the 16th, the plain-

tiff must have passed over the excavation on the completed portion of the viaduct, or have gone around it upon the public road. He must also have pursued one or the other of these courses in order to reach the office on the morning of the 17th, when he went to inquire as to the hour when his train would leave. On the evening of the 17th the crew went to bed in the caboose, about 7 o'clock. At that time the caboose and the gondola were standing as in the morning, held by the hand-brakes. The brakes hold cars so placed if they are set securely and are not disturbed by impact by other cars. The yard crews were to make up two trains that night, one of which was No. 56. About 7:45 two other cars were put upon track 4, to the east of the gondola and against it. One was a gondola and the other a flat car loaded with steel. They were left standing, held by the hand-brakes only. About 9:45 four other cars, loaded with copper, were pushed upon the track from the east by the yard crew and put against the car loaded with steel. The cars thus set together were automatically coupled and were left standing, apparently held securely by the brakes. The yard crew then went to secure other cars. Upon their return a few minutes later all the cars left by them, including the empty gondola and the caboose, had disappeared. The six cars which had been coupled together had in some manner been released and gotten under way, and, colliding with the gondola and caboose, had driven them to the excavation, with the result that the west end of the caboose was precipitated into it. The plaintiff was awakened by the impact, but, supposing that it was produced by the crew in making up his train—hard bumps of that character being not unusual—he did not give it serious attention until the car began to gather speed. He then called to the brakemen and attempted to escape, but was too late. He reached the platform as the car began to descend into the excavation, and as he held on by the hand-bars he was struck by something upon the hip, receiving the injury of which he complains. Whalen was the immediate superior of Doyle. Trains were moved and cars were placed according to Whalen's

directions. Whalen usually went off active duty at 7 o'clock in the evening. At the time of the accident he was at his home, having gone off duty at the usual time. The rules of the company contained the following:

"Rule 13. Employees of the company must devote themselves to its service, attending during the prescribed hours of the day or night, and residing wherever required.

"Rule 14. No employee will be allowed to absent himself from duty without permission from the head of the department in which employed."

"Rule 16. Yardmasters report to the trainmaster, assistant superintendent, or superintendent; perform work ordered by agents; and are in charge of yard work, yard engines and crews, and train and engines while in yards."

Unless a member of a train crew was laid off, or was absent by permission, he was, under rules 13 and 14, required to be within call at all times and ready for duty. So the plaintiff interpreted these rules, and it is not questioned that his view of their meaning was correct. The plaintiff had verdict and judgment. The defendants have appealed from the judgment and an order denying their motion for a new trial.

The complaint is framed upon the theory that the defendant company is liable to the plaintiff, as one of its employees, for injuries received while engaged in the discharge of his duties, through the negligence of other employees, and that the other defendants are liable because they were personally guilty of the acts of negligence which caused the injury. It declares upon the statute which abolishes the fellow-servant rule. (Revised Codes, sec. 5251.) The acts charged as negligence are the handling of the cars by the yard crew in making up the train in such manner as to permit them to escape and collide with the caboose, driving it into the excavation, and the omission by defendants to provide some device, at the brink of the excavation, to prevent the caboose from being precipitated therein, if from any cause it escaped.

The first contention made by counsel is that the evidence is insufficient to justify the verdict, for that it appears that at

the time the plaintiff was injured he was not engaged actively in the discharge of duties for which he was employed by the company, but was a mere licensee upon its property, to whom it and its employees owed no duty other than to refrain from doing him a willful or wanton injury; and hence that no liability can be predicated upon the statute. In support of this contention counsel argue that, while one is in the employ of another under a contract, he is, in a popular sense, an employee during the entire period covered by the contract; yet the rights and duties incident to the relation of master and servant, in a legal sense, do not subsist, except during the time which, under his contract, he must actively devote to the duties of his employment. To make the statement in another way: Unless the servant is at a particular time under the control of the master, giving his time and attention to the particular duties he is employed to do, he is *pro hac vice* a stranger, to whom the master, as such, owes no duty whatever, except such as he must observe toward any other stranger under the social compact.

While the statute has to do exclusively with those persons who sustain toward each other the relation of master and servant, it does not undertake to define who those persons are, but merely imposes certain rights and liabilities upon them, leaving it to the courts to determine when persons have assumed the relation. (Dresser's Employer's Liability, sec. 8.) It is not always easy to determine exactly when the relationship, once established, ceases, and the servant may be said for the time being to be his own master. In *Packet Co.* v. *McCue,* 17 Wall. 508, 21 L. Ed. 705, the question arose upon the evidence as to whether the employment of the deceased had ended at the time he received the injury. The court said: "It was for the jury to say from the nature of the employment, the manner of engaging the hands, the usual mode of transacting such a business, and the other circumstances of the case, whether the service had or had not ended at the time of the accident." On this subject Mr. Dresser says: "If a general rule were to be laid down, it might perhaps be that the employment begins when

the servant enters premises or trains in the control of his master for the purpose of reaching the particular place where he is to work. The length of time before or after the hour for beginning work is not a guide." (Dresser's Employer's Liability, sec. 13.)

The facts and circumstances which appear from the statement of the evidence before us furnish support for the inference that, during the entire time when the plaintiff was away from his home terminal, he was, except when notified that his services were not wanted, subject to be called on duty. He was required to be within call, and, as he understood the rules, was subject to discipline if he was not. It is also a fair inference that though he was not under his contract required to occupy the caboose at night, he was nevertheless expected to do so, and not only this, but that he had a right to do so, because it was under all the circumstances a substantial privilege accorded to him under the contract, which the company was not at liberty to withdraw at will. If these inferences are permissible, and we think they are, then the conclusion seems inevitable that he was in the caboose in the course of his employment, and that the members of the yard crew were his fellow-servants, for whose negligence the company is liable under the statute. The cases differ greatly as to whether, under such circumstances as are presented in this case, the relationship of master and servant subsists, and whether or not the servant is entitled to all the benefits of such relationship. As is said in the note to *Taylor* v. *Bush & Sons Co.*, 12 L. R. A., n. s., 853, they arise in a variety of circumstances. Some of them involve the fellow-servant doctrine, others the assumption of risks, and still others involve consideration of the question whether the master has used ordinary care to furnish a reasonably safe place for the servant to be while at work. In all the cases, however, the essential question to be determined is: Did the relationship of master and servant actually exist at the time of the injury?

In *St. Louis, A. & T. Ry. Co.* v. *Welch,* 72 Tex. 298, 10 S. W. 529, 2 L. R. A. 839, the plaintiff was the foreman of a bridge

gang in the employment of the defendant. At the time of the accident he was asleep in a car provided by the company for that purpose, which was lying upon a sidetrack. Other employees of the defendant, in operating one of its freight trains, negligently ran it upon the sidetrack, and struck the car in which the plaintiff was, with such violence that plaintiff was seriously injured. The court, after sustaining the contention made by the defendant that the plaintiff was a fellow-servant of the employees operating the train, said: "The plaintiff at the time of the accident was asleep on a car belonging to the company, provided by it for that purpose, which was placed upon its sidetrack. He was liable to be called upon at any moment to go out with his gang upon duty upon the road. We think he must be held to have been upon duty at the time he received the injury. That the accident occurred when he was resting from his labors, we think makes no difference. He was subject to the call of the company at the time, and his case differs from that of other servants who engage for certain hours of employment, and who are injured during the intervals in which the master has no claim upon his [their?] services."

In *International & G. N. R. Co.* v. *Ryan,* 82 Tex. 565, 18 S. W. 219, the plaintiff was employed by the railway company by the day as a carpenter. He was on a car of the defendant on his way, with other members of the working crew to which he belonged, from the station where the crew had been at work, to another where similar work was to be done. They had orders to stop in the yards at San Antonio, an intermediate station, to do some repair work. The car was standing on a sidetrack in the yards. The plaintiff, having spent a portion of the evening in the city, had returned to the car, and was engaged in writing a letter. Another employee, in charge of a switch engine, negligently ran it into the car and seriously injured him. The court held that the plaintiff and the employees in charge of the switch engine were fellow-servants. It disposed of the contention that he was not in the employ of the defendant, by saying: "In this case we think it is evident, from the facts testified to by the appellee, that he was, in contemplation of law,

in the employment of the company at the time of the collision. His presence in the car on the sidetrack at the time of the collision can be explained in no other way under the proof. It was only by reason of the fact that he was an employee of the company that he was in the car on the sidetrack at the time he was injured.''

In *Dishon* v. *Cincinnati, N. O. & T. Ry. Co.* (C. C.), 126 Fed. 194, the court discussed somewhat at length the reason which furnishes the basis of the fellow-servant rule, and reviewed exhaustively the cases in which it has been invoked and applied in order to relieve the master from liability. The facts in the case show that deceased was in the employ of the defendant as a section-hand. He boarded with the section boss at the company's section-house. On the evening of the accident, after he had finished his work and eaten his supper, he started with two others to go to the railway station on the opposite side of the track. There was an opening between cars standing on a sidetrack which he had to cross. He had passed through this on his way from work. He and his companions undertook to pass between the cars. One of them passed through in safety; the deceased then attempted to pass through, but while he was making the attempt, the opening was closed by the cars being shoved back by an engine manipulating the cars on the track. The result was that he was crushed and killed. The court held that the death of the deceased was caused by the negligence of his fellow-servants, a risk which he assumed when he entered the employment of the defendant. Touching the question involved here it is said: ''There is no good reason for holding that the assumption of risk exists when the servant is doing one thing required of him by the contract, and does not exist when he is doing another thing so required, or that it exists when he is doing a thing required of him by the contract, and does not exist when he is doing a thing which he is simply authorized to do by the contract. Any stopping short, therefore, of making the assumption by the servant of the current risks of his employment as wide as the action on his part contem-

plated by the contract, discredits the principle and reasoning on which the fellow-servant doctrine is based and that doctrine itself. Hence, it is never a test of the application of the fellow-servant doctrine to any given case, whether or not the injury was received by the servant during working hours or when he was at work after working hours. The sole test of its application thereto is whether at the time of the injury the servant was doing something which it was his duty or he had a right to do under the contract. If he was so acting, the doctrine applies; if not, it does not apply.'' This case was subsequently reviewed by the circuit court of appeals (133 Fed. 471, 66 C. C. A. 345). The judgment was affirmed on the ground that it appeared that the deceased was guilty of contributory negligence in attempting to pass between the cars as he did. The appellate court intimated that, in view of its decision in the case of *Ellsworth* v. *Metheney*, 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389, the conclusion of the circuit court that the deceased was still in the course of his employment was erroneous. It did not, however, question the soundness of the rule announced by the circuit court as to the test by which the question when the relation of master and servant ceases must be determined. It may be admitted that the conclusion of the circuit court that the deceased was acting within the scope of his duty when injured was erroneous. We are inclined to think it was. Nevertheless, the rule, as stated, is, in our opinion, a just one, and is fully sustained by the great number of cases cited and examined. Even the briefest notice of these cases would extend this opinion beyond any reasonable limit. We content ourselves by reference to the opinion itself, and to the note to *Taylor* v. *Bush & Sons Co., supra,* wherein will be found a great number of cases illustrating the conflicting views of the courts. It may be observed of the case of *Ellsworth* v. *Metheney* that while the appellate court held that the deceased was not at the time of his death in the discharge of the duties of his employment, and hence was not entitled to recover on the theory that he was. a servant of the defendant, it held that the case should

have been submitted to the jury upon the question whether the defendant had been guilty of negligence in installing a dangerous apparatus in a place where his employees had a right to be as licensees by his implied consent, without properly guarding it. The apparatus consisted of a highly charged electric wire strung on brackets along the wall of a dark entry in a mine in which the deceased was working. The entry was not in the part of the mine where deceased was at work, but the men, with the knowledge of defendant, were accustomed to use it when they came from their rooms during refreshment and rest at the noon hour. The deceased had passed through it to the room of a fellow-workman. On his return he came in contact with the wire and was killed. We have referred to this case because counsel for defendants have cited it in support of their contention, and also because of the further contention made by them that the plaintiff was in the caboose as a mere licensee.

The conclusion we have reached, that the plaintiff was in the caboose for the purpose of being within call by the defendant company to go on duty, and was therefore in the discharge of his duties, involves the conclusion, also, that he was not there as a mere licensee, and that the rule of liability declared by the statute applies to the case made by the evidence. It is not at all conclusive that the pay of the plaintiff ceased when he registered in on his arrival at Butte. In the light of the evidence, under the contract of employment it was within the contemplation of both parties that he should hold himself subject to the order of the company after his pay had ceased; and it seems clear that a contract including a stipulation of this kind, express or implied, is not open to any legal objection.

Under the circumstances disclosed, the obligation was upon the company to use ordinary care to provide a reasonably safe place for the use of plaintiff, and to maintain it in that condition. The evidence furnishes ample support for the conclusion that it failed to discharge its obligation in this regard; for, though it may be conceded for present purposes that it was

not required to provide a block or other device to prevent escaping cars from falling into the excavation and that the yards were otherwise in a reasonably safe condition, it was nevertheless bound to see that the yard crew took ordinary precaution to maintain this condition, and not to allow cars to escape and collide with the caboose so as to expose the plaintiff to additional peril. The evidence tends to show that but for the escape of the loaded cars, which the ordinary precaution of securely setting the brakes would have prevented, the accident would not have occurred. For this lapse of duty the defendant company is liable, as is also the defendant Doyle; for, for the time being, he stood in the place of the company, and it was his personal duty to see that the proper precautions were observed. But we are of the opinion that a separate motion for nonsuit, made on behalf of Whalen, should have been sustained. It is true that he was foreman of the yards and had general direction of the operations there, as the immediate superior of Doyle. Yet he was off duty at his home at the time of the accident. He was not, under the evidence, responsible for the unguarded condition of the excavation. It was a primary duty of the company to take precaution with reference to it; and under the rule he was not required to do anything further than to direct the movement of cars and observe the precautions attending the performance of that duty. And since he was not actively on duty in this regard at the time of the accident, he cannot be held either for personal neglect of duty nor as an intermediate agent of the company.

Contention is made that the charge of the court was erroneous in that, while two acts of negligence are charged conjunctively, in the complaint, to-wit, the omission to guard the excavation and the negligence of the employees in handling the cars, it instructed the jury that plaintiff could recover upon a showing of fault in either respect. This point was not made in the trial court; but, even so, the defendants cannot complain. Let it be conceded that two separate causes of action are stated. The instructions were formulated upon the theory that if the

jury found fault in the first respect only, they should find
against the company only; but if they found fault in the second
respect, they should find against all of the defendants.   Since
the finding was against all of the defendants, we presume that.
they found negligence in the handling of cars.   Viewed in its:
first aspect, the complaint charges the violation of a primary
duty only, which did not fall within the scope of the employ-
ment of the yard crew, as we have already pointed out in de-
termining the liability of Whalen.   To this aspect of the case
the statute has no application, because the fault was not that of
a fellow-servant of plaintiff.   In its second aspect the case falls.
under the statute.   Advantage of this fault, if it be such, should
have been taken by special demurrer.   It is not a valid objec-
tion to the judgment, so far as concerns the company, that the
jury were permitted to find upon either view of the case.   Al-
though several acts of negligence are alleged in the complaint,.
proof of all is not required.   A recovery will be sustained upon:
proof of any one or more of them.   (14 Ency. of Pl. & Pr. 345;.
29 Cyc. 587; *Hoskins* v. *Northern Pacific Ry. Co.*, 39 Mont. 394,
102 Pac. 988.)   Upon the evidence the jury may or may not
have concluded that the company was negligent in omitting to·
block the track.   Whether it did or not· is not material.   Their·
finding that there was negligence in the handling of cars is.
sufficient to sustain the verdict.

A similar contention is made with reference to the allega-
tions that the defendants negligently permitted the cars to be·
upon the track without setting the brakes, and that they negli-
gently drove the cars toward and against the caboose.   The·
contention is really based upon a technical objection to the
·form of the statement in the complaint.   The evidence tends.
to show that the cars escaped after they were left standing·
on the track.   This sustains the allegation from any point of
view.   If the defendants left the cars in such an insecure con-
dition that they escaped and collided with the caboose, the re--
sult was that they negligently drove them and thus caused the·
collision.   They put the effective cause of the accident in mo--

tion.  It was one and the same cause whether the cars moved of their own weight or were moved by an engine.

It is said that the plaintiff knew and understood the danger of the situation, and therefore, by going to sleep in the caboose, he assumed the risk.  There is no merit in this contention. That the place was not safe is apparent.  He assumed the risk of all dangers ordinarily incident to the handling of cars under the circumstances as he saw them.  Among these was a likelihood of injury due to the bumping of cars against the caboose during the making up of a train; but he had no cause to think when he went into the caboose that the yard crew would omit to observe ordinary precautions to secure the cars by means of the brakes, and thus add to the perils which he did assume. He was entitled to assume, looking to all the conditions as they actually were, that the place was reasonably safe.  It was not apparent to him, nor was he bound to know, that the yard crew were going to be so negligent in the course of their employment that he would certainly be injured if he remained in the caboose.  The true test to be applied is not whether the injured servant exercised reasonable care to discover the dangers, but whether the danger was known or plainly observable.  (*Choctaw etc. R. Co.* v. *McDade,* 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; *McCabe* v. *Montana Central Ry. Co.,* 30 Mont. 323, 76 Pac. 701; *Anderson* v. *Northern Pacific Ry. Co.,* 34 Mont. 181, 85 Pac. 884.)   The evidence fairly presented a case for the jury on this point.

Fault is found with the charge of the court in many particulars.  We have given our attention to them, but find no prejudicial error in any of them.  Nor do we find that the court omitted any instruction which it should have given.  Most of counsel's criticisms are predicated upon the assumption that the theory of the case adopted by the trial court, as to the liability of the defendants upon any aspect of it, was erroneous. What has been said in the discussion of the principal contention disposes of all of these criticisms.

As to the measure of damages, the court gave, among others, the following instruction: "If you find for the plaintiff, and

should further find that the capacity of the plaintiff to labor or earn money has been reduced by reason of his injuries, you should award him such sum on that account as will purchase an annuity equal to the difference in the amount he could earn annually in view of his injuries and the amount he could have earned annually were it not for his injuries, keeping in mind, however, any diminution in his earning capacity that may ensue on account of his advancing years or from other causes if the injury had not occurred.'' It is said that the jury were here told that, having determined the yearly loss of earnings by plaintiff by reason of his impaired capacity, the cost of an annuity for a like amount was the standard by which they should measure the amount of their verdict. As an abstract statement of law there is no fault to be found with the instruction. What it would cost to buy an annuity for the amount which a person in the condition in which plaintiff appeared to the jury to be at the time of the trial, is as nearly an exact standard as can be laid down. Of course, in ascertaining the amount of the annuity, the jury must take into consideration probable diminution of earning capacity due to causes other than the injury itself, such as advancing age, the apparent present state of plaintiff's health, the apparent permanence or lack of permanence of his disability, his habits of life, and the possibility that his employment would have been continuous, and the like. These are the conditions referred to in the latter part of the instruction, and, if any fault is to be found with it, it lies in the fact that these conditions are not enumerated with more particularity. In a later instruction, however, given at the request of the defendants, after referring to the evidence touching the use they might make of mortality and annuity tables, the court carefully called the attention of the jury to these particular conditions, saying to them that these tables were not to be considered as an absolute basis for their calculations, but must be used by them as a guide only so far as the facts before them corresponded to those from which the tables were computed. This brings the instructions within the

rule as laid down in *Bourke* v. *Butte Electric Ry. Co.,* 33 Mont. 267, 83 Pac. 470, as explained in *Lewis* v. *Northern Pacific Ry. Co.,* 36 Mont. 207, 92 Pac. 469, and *Robinson* v. *Helena Light & Ry. Co.,* 38 Mont. 222, 99 Pac. 837.

Other alleged errors have been examined, but none of them have been found sufficiently meritorious to require special notice.

The judgment and order are affirmed as to the defendants railway company and Doyle; as to the defendant Whalen they are reversed, and the cause is remanded, with directions to the district court to dismiss the action as to him.

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.